**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **IN RE:** | **CHAPTER 11** |
| **WILLIAM LEE GENTRY,** | |
| **Debtor.** | **CASE NO. 17-65615-sms** |

**DISCLOSURE STATEMENT FOR PLAN OF REORGANIZATION**

**Dated this 25th  day of April, 2018**

Filed by:

William Lee Gentry
Debtor and Debtor in Possession

Attorneys for Debtor in Possession:

Leon S. Jones
Cameron M. McCord
Jones & Walden, LLC
21 Eighth Street, NE
Atlanta, Georgia 30309
(404) 564-9300

## I.  Introduction and General Information

This disclosure statement ("Disclosure Statement") is submitted by William Lee Gentry (the "Debtor"), to provide information to parties in interest about the Chapter 11 Plan (the "Plan") filed by Debtor. This introductory section is qualified in its entirety by the detailed explanations which follow and the provisions of the Plan.

This Disclosure Statement sets forth certain information regarding Debtor's prepetition history and events that have occurred during Debtor's Chapter 11 case. This Disclosure Statement also describes the Plan, alternatives to the Plan, effects of confirmation of the Plan, and the manner in which Distributions will be made under the Plan.  In addition, this Disclosure Statement discusses the confirmation process and voting procedures that holders of Claims in Impaired Classes must follow for their votes to be counted.

**Parties voting on the Plan should read both the Plan and this Disclosure Statement.**

### A.  Definitions

Unless otherwise defined, capitalized terms used in this Disclosure Statement have the meanings ascribed to them in the Plan.  In the event of an inconsistency between the Disclosure Statement and the Plan, the terms of the Plan shall govern and such inconsistency shall be resolved in favor of the Plan. The Filing Date, as defined in the Plan, shall mean September 5. 2017. The Effective Date, as defined in the Plan, shall mean the date that is 60 days after the entry of a Confirmation Order.

### B.  The Disclosure Statement

The primary purpose of this Disclosure Statement is to provide parties entitled to vote on the Plan with adequate information so that they can make a reasonably informed decision prior to exercising their right to vote to accept or reject the Plan.

The Bankruptcy Court's approval of this Disclosure Statement constitutes neither a guarantee of the accuracy or completeness of the information contained herein, nor an endorsement of the Plan by the Bankruptcy Court.

When and if confirmed by the Bankruptcy Court, the Plan will bind Debtor and all holders of Claims against Debtor, including governmental entities, regardless of whether or not they are entitled to vote or did vote on the Plan and whether or not they receive or retain any Distributions or property under the Plan. Thus, you are encouraged to read this Disclosure Statement carefully.  In particular, holders of Impaired Claims who are entitled to vote on the Plan are encouraged to read this Disclosure Statement, the Plan, and any exhibits to the Plan and Disclosure Statement carefully and in their entirety before voting to accept or reject the Plan. This Disclosure Statement contains important information about the Plan, the method and manner of distributions under the Plan, considerations pertinent to acceptance or rejection of the

Plan, and developments concerning this case.

## II.     Voting on the Plan  and Confirmation Process

### A.      Voting Instructions

Accompanying this Disclosure Statement are copies of the following documents: (1) the Plan and (2) a Ballot to be executed by Holders of Claims in Classes to the extent such classes are impaired and are entitled to vote to accept or reject the Plan.  The Ballot contains voting instructions.  Please read the instructions carefully to ensure that your vote will count.

The Disclosure Statement, the form of Ballot, and the related materials delivered together herewith (collectively, the "Solicitation Package"), are being furnished to Holders of Claims in Classes for the purpose of soliciting votes on the Plan.

If you did not receive a Ballot in your Solicitation Package, and believe that you should have received a Ballot, please contact, Jones & Walden, LLC, 21 Eighth Street, NE, Atlanta, Georgia 30309, (404) 564-9300 (Attn: Cameron M. McCord, Esq.).

**In order for your Ballot to count, it must be received within the time indicated on the Ballot and the Ballot must clearly indicate your Claim, the Class of your Claim, and the amount of your Claim.**

**By enclosing a Ballot, Debtor is not admitting that you are entitled to vote on the Plan, is not admitting that your Claims is allowed as set forth on the Ballot, and is not waiving any right to object to your vote or your Claim.**

### B.      Who May Vote

Only a holder of an Allowed Claim classified in an Impaired Class is entitled to vote on the Plan.  Impaired classes are entitled to vote to accept or reject the Plan.  As set forth in section 1124 of the Bankruptcy Code, a class is "Impaired" if legal, equitable, or contractual rights attaching to the claims or equity interests of that class are modified or altered.

Any class that is "unimpaired" is not entitled to vote to accept or reject a plan of reorganization and is conclusively presumed to have accepted the Plan.

A Claim must be "allowed" for purposes of voting in order for such creditor to have the right to vote.  Generally, for voting purposes a Claim is deemed "allowed" absent an objection to the Claim if (i) a proof of claim was timely filed, or (ii) if no proof of claim was filed, the Claim is identified in Debtor's Schedules as other than "disputed," "contingent," "unknown" or "unliquidated," and an amount of the Claim is specified in the Schedules, in which case the Claim will be deemed allowed for the specified amount.  In either case, when an objection to a Claim is filed, the creditor holding the Claim cannot vote unless the Bankruptcy Court, after notice and hearing, either overrules the objection, or allows the Claim for voting purposes.

**Debtor in all events reserves the right through the claim reconciliation process to object to or seek to disallow any claim for distribution purposes under the Plan.**

### C.        Requirements of Confirmation

The Bankruptcy Court can confirm the Plan only if all the requirements of § 1129 of the Bankruptcy Code are met.  Those requirements include the following:

1.  The Plan classifies Claims and Interests in a permissible manner;

2.  The contents of the Plan comply with the technical requirements of the Bankruptcy Code;

3.  The Plan has been proposed in good faith and not by any means forbidden by law;

4.  The disclosures concerning the Plan are adequate and include information concerning all payments made or promised in connection with the Plan, as well as the identity, affiliations, and compensation to be paid to all officers, directors, and other insiders; and

5.  The principal purpose of the Plan is not the avoidance of tax or the avoidance of the securities laws of the United States.

In addition to the confirmation requirements described above, the Plan must also be approved by all Impaired Classes of Claims entitled to vote.  If, however, the Plan has not been approved by all Impaired Classes of Claims, the Court may nevertheless "cram down" the Plan over the objections of a dissenting Impaired Class.  The Plan may be "crammed down" so long as it does not discriminate unfairly, is fair and equitable with respect to each dissenting Impaired Class of Claims, and at least one Impaired Class has voted in favor of the Plan without regard to any votes of insiders.  Debtor will seek to "cram down" the Plan if necessary.

### D.        Acceptance or Rejection of the Plan and Cram Down

The Class containing your Claim will have accepted the Plan by the favorable vote of majority in number and two-thirds in amount of Allowed Claims actually voting.  In the event that any Impaired Class of Claims does not accept the Plan, the Bankruptcy Court may still confirm the Plan if an Impaired Class accepts it and if, as to each Impaired Class that has not accepted the Plan, the Plan "does not discriminate unfairly" and is "fair and equitable." If you hold an Allowed Secured Claim, the Plan is fair and equitable if you retain your lien and receive deferred cash payments totaling the allowed amount of your Secured Claim as of the Effective Date of the Plan, the collateral is sold and your Lien attaches to the proceeds of the sale, or you are otherwise provided with the "indubitable equivalent" of your Allowed Secured Claim.

### E.    Confirmation Hearing

The Bankruptcy Court has entered an order (the "Scheduling Order") that schedules a hearing to consider confirmation of the Plan ("Confirmation Hearing") at the time indicated in the Order Approving Disclosure Statement and Notice of Confirmation Hearing. The Confirmation Hearing may be adjourned from time to time without further notice except for announcement at the Confirmation Hearing to those parties present at the Confirmation Hearing.

### F.    Objections to Confirmation

As will be set forth in the Scheduling Order, any objections to confirmation of the Plan must be in writing, set forth the objector's standing to assert any such objection, and must be filed with the Bankruptcy Court and served on counsel for the Debtor by the time indicated in the Scheduling Order. The Scheduling Order contains all relevant procedures relating to the submission of objections to confirmation and should be reviewed in its entirety by any party who has an objection to confirmation.

### G.    Whom to Contact for More Information

If you have any questions about the procedure for voting your Claim or the packet of materials you received, please contact Cameron M. McCord at the address indicated below or by telephone at (404) 564-9300.  If you wish to obtain additional copies of the Plan, this Disclosure Statement, or the exhibits to those documents, at your own expense, unless otherwise specifically required by Bankruptcy Rule 3017(d), please contact Jones & Walden, LLC, 21 Eighth Street, NE, Atlanta, GA 30309, Attn: Amanda Hirsch; or by facsimile at (404) 564-9301, Attn: Amanda Hirsch, or by electronic mail at ahirsch@joneswalden.com.

## III.    Historical Background

### A.    Description of Debtor and Reasons for Filing Bankruptcy

Debtor is a resident of the City of Atlanta, State of Georgia. Debtor is a shareholder of Peachtree Data, Inc. Due to oversight on the Debtor's financial management, Debtor fell behind on certain tax obligations to the Internal Revenue Service and the Georgia Department of Revenue. The Debtor filed the instant bankruptcy case in order to liquidate certain assets and satisfy debts owed to the taxing authorities without the threat of collection.

### B.    Prepetition Assets and Liabilities

On the Filing Date, as disclosed on Schedule A, Debtor owned the following real property:

| Real Property | Pre-Liquidation Value |
|---|---|
| 1800 Sugarloaf Club Dr., Gwinnett County, GA | $1,200,000.00 |
| 1569 Center Point Road., Carroll County, GA | $500,000.00 |
| 4.07 Acres – Pleasant Hill Road, Carroll County, GA | $19,509.00 |

On the Filing Date, Debtor owned the following personal property:

| Personal Property | Scheduled Value |
|---|---|
| 1993 Prevost Crew Bus | $20,000.00 |
| Furniture for a 6 Bedroom home | $25,000.00 |
| Electronics | $1,500.00 |
| Mega Amusement Memorabilia | $5,000.00 |
| Guitars | $6,000.00 |
| Golf Clubs, Road Bike | $750.00 |
| Guns | $250.00 |
| Clothes and Shoes | $1,500.00 |
| Wedding Ring | $100.00 |
| Cash | $37,500.00 |
| Savings Account - UCB | $1,000.00 |
| Checking Account – BOA | $750.00 |
| Peachtree Data Shares | Unknown |
| TOTALS | $1,818,859.00 |

Debtor's liabilities as of the Filing Date (based on Debtor's schedules and filed proofs of claim) totaled $4,820,114.85 which includes (a) secured claims totaling $3,632,677.03, (b) priority claims totaling $668,464.54; and (c) unsecured claims totaling approximately $637,145.46.

Debtor's secured claims include obligations to Bank of America as well as the following tax liens:

| Tax Agency | Tax Period | Lien Recorded | County Recorded | Book and Page | Amount | Serial/Execution # |
|---|---|---|---|---|---|---|
| GADOR | 2007 | 4/12/2011 | Gwinnett | Book 3291 Page: 270 | $252,447.18 | REV 11044466 |
| IRS | 2005 | 1/18/2012 | Gwinnett; Carroll | Book: 3513 Page: 72; Book: 135 Page: 859 | $225,535.02 | 840859112; 840859012 |
| IRS | 2006 | 3/23/2012 | Gwinnett, Carroll | Book: 3601 Page: 17; Book: 135 Page: 371 | $151,887.22 | 855456112; 855456012 |
| IRS | 2007 | 4/20/2012 | Gwinnett, Carroll | Book: 3621 Page: 82; Book: 136 Page:235 | $653,693.75 | 860690312; 860690212 |
| IRS | 2008, 2009, 2010 | 7/16/2012 | Gwinnett | Book: 3675 Page: 242 | $1,641,915.98 | 879990212 |
| IRS | 2008, 2009, 2010 | 7/23/2012 | Carroll | Book: 138 Page: 427 | | 879990112 |
| IRS | 2011 | 11/5/2012 | Gwinnett | Book: 3756 Page: 191 | $69,950.47 | 902746112 |
| IRS | 2011 | 11/6/2012 | Carroll | Book: 141 Page: 160 | | 902746012 |
| IRS | 2012 | 8/21/2103 | Gwinnett | Book: 400 Page: 85 | $171,126.02 | 955282113 |
| IRS | 2012 | 8/26/2013 | Carroll | Book: 154 Page: 403 | | 955483513 |
| IRS | 2002, 2013 | 12/15/2014 | Gwinnett | Book: 4303 | $90,336.71 | 133104614 |

| Tax Agency | Tax Period | Lien Recorded | County Recorded | Book and Page | Amount | Serial/Execution # |
|---|---|---|---|---|---|---|
| | | | | Page: 183 | | |
| GADOR | 2010 | 1/16/2015 | Gwinnett | Book: 4316 Page: 220 | $102,802.20 | REV 140332379 |
| GADOR | 2015 | 4/10/2017 | Gwinnett | Book: 4831 Page: 201 | $69,738.43 | REV 160411782 |

## IV.    The Bankruptcy Case

### A.    The Bankruptcy Case

On September 5, 2017, Debtor filed a petition for relief under Chapter 11 of Title 11, United States Code, 11 U.S.C. §§ 101 et seq. (as amended, modified or supplemented, the "Bankruptcy Code").   Debtor continues to manage his affairs as debtor-in-possession in accordance with Sections 1107 and 1108 of the Bankruptcy Code.

### B.    Professionals

Debtor filed an application requesting authorization to retain the law firm of Jones & Walden, LLC ("J&W") to serve as bankruptcy counsel in this Case. The Court entered an order approving J&W's employment.

### C.    Schedules

Debtor filed his schedules and statement of financial affairs.  A copy of the schedules and statement of financial affairs can be reviewed at the Clerk, U.S. Bankruptcy Court, 1340 Russell Federal Building, 75 Ted Turner Dr, Atlanta, GA 30303, during normal business hours or online at  http://ecf.ganb.uscourts.gov  (registered users) or  http://pacer.psc.uscourts.gov  (unregistered users).

### D.    Payments to Creditors Within the Ninety (90) Days and One (1) Year Prior to the Filing Date

The Debtor did not make payments to creditors during the ninety (90) days prior to the Filing Date which were not in the ordinary course of business.   Additionally, with regard to insiders, the Debtor did not make any payments to creditors who were insiders within the one (1) year prior to the Filing Date.

Under the Bankruptcy Code, Debtor may seek to avoid and recover certain transfers that occur within the ninety (90) days prior to the Filing Date as preferential under Sections 547 and 550 of the Bankruptcy Code.  The transfers which may be subject to avoidance and recovery must aggregate over $6,225.00 in value. Debtor is not aware of any such actionable payments.

To the extent any are discovered, Debtor reserves the right to pursue any and all actions he deems appropriate and nothing herein shall be construed as a waiver of any claims or causes of action.

### E.    Bar Date

The Court entered an order setting November 17, 2017 (the "Bar Date") as the last day for all creditors and parties in interest to file proofs of claim.

## V.    Summary of the Plan

**The following summary of the Plan provides only a brief description of its provisions.  The summary is qualified in its entirety by the more detailed descriptions of the Plan in the Disclosure Statement and by the terms of the Plan itself.**

The Plan provides for an equitable distribution to creditors of Debtor and preserves the value of Debtor's estates.  Debtor believes that any alternative to confirmation of the Plan, such as liquidation, would result in significant delays, litigation, and/or impaired recoveries. Moreover, Debtor believes that the creditors will receive greater recoveries under the Plan than those that would be achieved in liquidation or under an alternative Chapter 11 plan.  **For these reasons, Debtor urges you to return your Ballots accepting Debtor's Plan.**

The Plan contemplates the reorganization of Debtor and the resolution of the outstanding Claims against Debtor pursuant to sections 1129 and 1123 of the Bankruptcy Code.  The Plan classifies all Claims against Debtor into separate Classes.

## VI.    Description of the Plan

### A.    Retention of Property by Debtor

Upon confirmation, Debtor will retain all of the property of the estate free and clear of liens, claims, and encumbrances not expressly retained by Creditors.  Debtor will have the rights and powers to assert any and all Causes of Action (defined as all causes of action, choses in action, claims, rights, suits, accounts or remedies belonging to or enforceable by Debtor, including Avoidance Actions, whether or not matured or unmatured, liquidated or unliquidated, contingent or noncontingent, known or unknown, or whether in law or in equity, and whether or not specifically identified in Debtor's Schedules).  The Disclosure Statement and Plan are filed with a full reservation of rights.

### B.    Parties Responsible for Implementation of the Plan

Upon confirmation, Debtor will be charged with administration of the Case.  Debtor will be authorized and empowered to take such actions as are required to effectuate the Plan, including the prosecution and enforcement of Causes of Action. Debtor will file all post-confirmation reports required by the United States Trustee's office.  Debtor will also file the

necessary final reports and will apply for a final decree as soon as practicable after substantial consummation and the completion of the claims analysis and objection process.

### C.    Liabilities of Debtor

Debtor will not have any liabilities except those expressly assumed under the Plan. Debtor will be responsible for all expenses incurred by Debtor in the ordinary course of business after the Filing Date ("Ordinary Course Expenses"), and those Ordinary Course Expenses will be paid in the ordinary course of business as they become due or as agreed upon by the Holder of the Ordinary Course Expense claim.

### D.    Funding of the Plan

Debtor shall pay all claims from Debtor's post-petition income and the sale of Debtor's real property.  A quarterly budget accurately reflecting the Debtor's post-petition income and anticipated Plan payments is attached hereto as <u>Exhibit "A".</u> Debtor shows that he will pay administrative expense claims from the "new value" included in Class 8 of the Plan or from some other source if no "new value" contribution under Class 8 is required. Additionally, the Debtor intends to sell property located at 1800 Sugarloaf Club Dr, Gwinnett County, GA ("Sugarloaf Property") and property located at 1569 Center Point Road #C, Carroll County, GA ("Center Point Property") (the Sugarloaf Property and the Center Point Property are hereinafter referred to as the "Properties") to satisfy the mortgages secured by the Properties and pay other claims under the plan. Debtor is currently interviewing brokers to list and sell the Properties and believes that the Properties will sell in the next 36 months for approximately $1,700,000.00. Additionally, Debtor holds a claim and will receive a disbursement in the Chapter 7 Bankruptcy Case of Mega Amusement, LLC, pending in the United States Bankruptcy Court, Northern District of Georgia, Case No. 14-59503 (the "Mega Disbursement"). The Debtor anticipates the Mega Disbursement will be approximately $150,000.00. Such funds will be used for purposes of funding the Plan.

The Plan provides that Debtor shall act as the Disbursing Agent to make payments under the Plan unless Debtor appoints some other person or entity to do so.  Debtor may maintain bank accounts under the confirmed Plan in the ordinary course of business.  Debtor may also pay ordinary and necessary expenses of administration of the Plan in due course.

### E.    Provisions Regarding Executory Contracts

To the best of his knowledge, Debtor is not a party to any unexpired executory contracts or leases.  Any unexpired leases or executory contracts which are not expressly assumed pursuant to this Plan or are the subject of a pending motion to assume shall be deemed rejected pursuant to Section 365 of the Bankruptcy Code on the Effective Date.

A proof of claim for damages arising from any executory contracted that is rejected must be filed in compliance with the Bankruptcy Rules on or before thirty (30) days after entry of the Confirmation Order.  Any claims which are not timely filed will be disallowed and discharged.

**F.     Avoidance Actions and Retained Rights**

The Plan provides that Debtor shall retain all rights of action against others.  The Plan also provides that Debtor shall retain "Avoidance Actions" under Chapter 5 of the Bankruptcy Code.  The Debtor may also have Claims against others which are retained.  Notwithstanding the foregoing, Debtor is reviewing his records and is not aware of any preference claims. Furthermore, Debtor is not aware of any fraudulent conveyance claims.

**G.     Treatment of Claims and Interests**

A brief summary of the Classes, the treatment of each Class, and the voting rights of each Class is set forth below.  A complete description of the treatment of each Class is set forth in Article 4 of the Plan.

Nothing herein shall constitute an admission as to the nature, validity, or amount of claim. Debtor reserves the right to object to any and all claims.

Debtor reserves the right to pay any claim in full at any time in accordance with the terms of the Plan (i.e. at the percentage distribution designated in the Plan with any accrued and unpaid interest, if any is due under the terms of the Plan) without prepayment penalty.

**6.1     Class 1:          Secured Claims of Bank of America**

Class 1 consists of the Secured Claim of Bank of America, N.A. ("BOA") in the approximate amount of $446,748.72 ("BOA Secured Claim"). The BOA Secured Claim is comprised of the following: (a) Class 1A in the amount of $193,242.43, (b) Class 1B in the amount of $40,423.74, (c) Class 1C in the amount of 4,942.22, and (d) Class 1D in the amount of 208,140.33. The treatment of the same is set forth below.

**6.1.1   Class 1A:**

Pursuant to proof of claim no. 3, the Class 1A claim of BOA arises from and in connection with that certain promissory note executed on August 6, 2004 by Debtor in favor of BOA in the original principal amount of $1,098,426.00 with a maturity of August 20, 2019, and interest accruing at the rate of 5.68% per annum. As of the Petition Date, the asserted Class 1A claim was $193,242.43 (such amount, less payment received post-filing, plus interest accruing at the rate of 5.68% annually under the terms herein is referred to as the "Class 1A Claim"). The Class 1A Claim is secured by a first priority lien on Debtor's real property located at 1800 Sugarloaf Club Drive, Duluth, GA 30097 (the "Sugarloaf Property") pursuant to the Security Deed dated August 6, 2004, and recorded on August 19, 2004, in the real property records of Gwinnet County, Georgia in Deed Book 39538 on Page 219 *et. seq.*

### 6.1.2    Class 1B:

Pursuant to proof of claim no. 7, the Class 1B claim of BOA arises from and in connection with that certain promissory note executed on September 14, 2004 by Debtor in favor of BOA in the original principal amount of $202,844.50 with a maturity of October 2, 2019, and interest accruing at the rate of 6.15% per annum. As of the Petition Date, the asserted Class 1B claim was $40,423.74 (such amount, less payment received post-filing, plus interest accruing at the rate of 6.15% annually under the terms herein is referred to as the "Class 1B Claim"). The Class 1B Claim is secured by a second priority lien on the Sugarloaf Property pursuant to the Security Deed dated September 14, 2004, and recorded on September 27, 2004, in the real property records of Gwinnet County, Georgia in Deed Book 39974 on Page 233 *et. seq.*

### 6.1.3    Class 1C:

Pursuant to proof of claim number 6, the Class 1C claim of BOA arises from and in connection with that certain promissory note executed on January 15, 2003 by Debtor and in favor of BOA as lender in the original principal amount of $407,493.00 with a maturity of February 7, 2018[1], and interest accruing at the rate of 5.580% per annum. As of the Petition Date, the asserted Class 1C claim was $4,942.22 (such amount, less payment received post-filing, plus interest accruing at the rate of 5.580% annually under the terms herein is referred to as the "Class 1C Claim"). The Class 1C Claim is secured by a first priority lien on the Debtor's real property located at 1589 Center Point Rd, Carrollton, GA 30117 (the "Center Point Property") pursuant to the Security Deed dated January 15, 2003, and recorded on February 6, 2003, in the real property records of Carroll County, Georgia in Deed Book 2124 on Page 234 *et. seq.*

### 6.1.4    Class 1D

Pursuant to proof of claim number 4, the Class 1D Claim of BOA arises from and in connection with that certain promissory note executed on April 15, 2003 by Debtor and in favor of BOA in the original principal amount of $220,000.00 with a maturity of April 14, 2028, and interest accruing at the rate of 4.250% per annum.   As of the Petition Date, the asserted Class 1D claim was  $208,140.33 (such amount, less payment received post-filing, plus interest accruing at the rate of 4.250% annually under the terms herein is referred to as the "Class 1D Claim") The Class 1D Claim is secured by a second priority lien on the Center Point Property pursuant to the Security Deed dated April 14, 2003, and recorded on May 6, 2003, in the real property records of Carroll County, Georgia in Deed Book 2240 on Page 7 *et. seq.*

Debtor shall market and sell the Sugarloaf Property and pay the then outstanding balance of the Class 1A and Class 1B Claims at the closing in full satisfaction of BOA's liens on the Sugarloaf Property within 36 months of the Effective Date (the "Sugarloaf Maturity Date"). Upon request by Debtor, BOA shall provide a payoff letter within 5 business days of request by

---

[1] Upon information and belief, the Class 1C Claim will be satisfied prior to the Confirmation Date.

Debtor confirming the amount due under the terms of this Class 1A and Class 1B of the Plan and allowing for the release of the liens on the Sugarloaf Property upon receipt of payments in full by BOA of the Class 1A and Class 1B Claims on the terms set forth herein. All remaining net proceeds from the sale of the Sugarloaf Property shall be used to make additional payments under Class 2 (IRS) and Class 3 (GDR) of the Plan ("Sugarloaf Proceeds").

Except as to payment of the Class 1A and Class 1B claims at closing and any other specific terms of the Plan, all pre-petition terms of BOA's pre-petition loan documents shall remain in full force and effect, provided however that the filing of this Bankruptcy shall not be a default thereunder and Debtor shall satisfy the Class 1A Claim and Class 1B Claim (collectively the "BOA Sugarloaf Claims") as provided by Class 1 of the Plan. BOA shall only by entitled to recover and Debtor shall only pay interest, late fees, attorney fees, and other default charges as expressly allowed by the Bankruptcy Court. The Class 1A and Class 1B liens of BOA on the Sugarloaf Property shall continue and attach on the Effective Date of the Plan to the same validity and priority as the pre-petition claims, and to the extent of the Class 1A and 1B Claims (as may have been reduced by post-petition payments, if any).

A failure by the Debtor to sell the Sugarloaf Property and pay the Class 1A and Class 1B claims by the Sugarloaf Maturity Date pursuant to the terms of the Plan shall be an event of default as to BOA under Class 1A and 1B. In the event of a default, BOA may send a Default Notice to Debtor in accordance with Article 2.3 of the Plan. Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default and the address for payment, which will accept overnight deliveries. Receipt by Debtor's Attorney shall not be deemed receipt by Debtor of the required Default Notice. In the event of an uncured default following proper Default Notice procedures and opportunity to cure pursuant to Article 2.3 of the Plan, BOA may exercise any and all rights and remedies it may have under applicable non-bankruptcy law regarding the Sugarloaf Property and assert a general unsecured Class 7 Claim for any valid and enforceable deficiency remaining after disposition of the Sugarloaf Property in accordance with applicable state law.

Debtor shall market and sell the Center Point Property and pay the then outstanding balance of the Class 1C and 1D claims at the closing in full satisfaction of BOA's liens on the Center Point Property within 36 months of the Effective Date (the "Center Point Maturity Date"). Upon request by Debtor, BOA shall provide a payoff letter within 5 business days of request by Debtor confirming the amount due under the terms of this Class 1C and 1D of the Plan and allowing for the release of the liens on the Center Point Property upon receipt of payments in full by BOA on the Class 1C and 1D Claims on the terms set forth herein.

Except as to payment of the Class 1C and Class 1D claims at closing and any other specific terms of the Plan, all pre-petition terms of BOA's pre-petition loan documents shall remain in full force and effect, provided however that the filing of this Bankruptcy shall not be a default thereunder and Debtor shall satisfy the Class 1C Claim and the Class 1D Priority Claim (collectively the "BOA Center Point Claims") as provided by Class 1 of the Plan. BOA shall only by entitled to recover and Debtor shall only pay interest, late fees, attorney fees and other default charges as expressly allowed by the Bankruptcy Court. The first and second priority

liens of BOA in the Center Point Property shall continue and attach on the Effective Date of the Plan to the same validity and priority as the pre-petition claims, and to the extent of the BOA Center Point Claims (as may have been reduced by post-petition payments, if any).

A failure by the Debtor to sell the Center Point Property by the Center Point Maturity Date pursuant to the terms of the Plan shall be an event of default as to BOA. In the event of a default under Class 1C or 1D, BOA may send a Default Notice to Debtor in accordance with Article 2.3 of the Plan. Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default and the address for payment, which will accept overnight deliveries. Receipt by Debtor's Attorney shall not be deemed receipt by Debtor of the required Default Notice. In the event of an uncured default following proper Default Notice procedures and opportunity to cure pursuant to Article 2.3 of the Plan, BOA may exercise any and all rights and remedies it may have under applicable non-bankruptcy law regarding the Center Point Property and assert a general unsecured Class 7 Claim for any valid and enforceable deficiency remaining after disposition of the Center Point Property in accordance with applicable state law.

Nothing herein shall constitute an admission as to the nature, validity, or amount of claim. Debtor reserves the right to object to any and all claims.

The Holder of an Allowed Class 1 BOA Secured Claim is impaired and entitled to vote to accept or reject the Plan. Nothing contained herein shall prohibit the Debtor from objecting to the Class 1 Claims for any reason.

**6.2    Class 2: Secured or Priority Tax Claim of the Internal Revenue Service**

The Internal Revenue Service ("IRS") filed amended proof of claim number 1 on October 27, 2017 in the amount of $3,415,660.82 consisting of (i) an asserted secured claim in the amount of $3,004,445.17 (the "Asserted IRS Secured Claim"), (ii) an asserted priority unsecured claim in the amount of $368,890.55 (the "Asserted IRS Priority Tax Claim") and (ii) an asserted general unsecured claim in the amount of $42,325.10 (the "Asserted IRS General Unsecured Claim").

The Court established November 17, 2017 as the Bar Date for filing proofs of claim. Any claim asserted or assertable by the IRS on or before the Filing Date or treated as arising prior to the Filing Date pursuant to 11 U.S.C. §502(i) but not asserted by the IRS by the Bar Date shall: (i) be time barred and fixed as provided in the Plan and (ii) any other, additional or amended claim assessable on or prior to the Filing Date shall be disallowed in its entirety and forever discharged. Debtor shall pay any claim of the IRS assessable, arising prior to the Filing Date or treated as arising prior to the Filing Date pursuant to 11 U.S.C. §502(i) on the terms herein, and the IRS shall be permanently enjoined from seeking payment in excess of the amounts provided for in the Plan for such claims.

### 6.2.1    Class 2A IRS Secured Claim

The Asserted IRS Secured Claim is based on the following asserted IRS Tax Liens attached to the IRS proof of claim:

| Tax Agency | IRS Tax Lien | Tax Period | Lien Recorded | County Recorded | Book and Page | Asserted Amount | Serial # |
|---|---|---|---|---|---|---|---|
| IRS | Collectively referred to herein as "IRS Lien 1" | 2005 | 1/18/2012 | Gwinnett; Carroll | Book: 3513 Page: 72; Book: 135 Page: 859 | $225,535/02 | 840859112; 840859012 |
| IRS | Collectively referred to herein as "IRS Lien 2" | 2006 | 3/23/2012 | Gwinnett, Carroll | Book: 3601 Page: 17; Book: 135 Page: 371 | $151,887.22 | 855456112; 855456012 |
| IRS | Collectively referred to herein as "IRS Lien 3" | 2007 | 4/20/2012 | Gwinnett, Carroll | Book: 3621 Page: 82; Book: 136 Page:235 | $653,693.75 | 860690312; 860690212 |

| Tax Agency | IRS Tax Lien | Tax Period | Lien Recorded | County Recorded | Book and Page | Asserted Amount | Serial # |
|---|---|---|---|---|---|---|---|
| IRS | Collectively referred to herein as "IRS Lien 4" | 2008, 2009, 2010 | 7/16/2012 | Gwinnett | Book: 3675 Page: 242 | $1,289,381.41 | 879990212 |
| | | | 7/23/2012 | Carroll | Book: 138 Page: 427 | | 879990112 |
| IRS | Collectively referred to herein as "IRS Lien 6" | 2011 | 11/5/2012 | Gwinnett | Book: 3756 Page: 191 | $50,180.09 | 902746112 |
| | | | 11/6/2012 | Carroll | Book: 141 Page: 160 | | 902746012 |
| IRS | Collectively referred to herein as "IRS Lien 7" | 2012 | 8/21/2103 | Gwinnett | Book: 400 Page: 85 | $123,181.62 | 955282113 |
| | | | 8/26/2013 | Carroll | Book: 154 Page: 403 | | 955483513 |
| IRS | Collectively referred to herein as "IRS Lien 8" | 2002, 2013 | 12/15/2014 | Gwinnett | Book: 4303 Page: 183 | $200,163.55 | 133104614 |

The IRS Tax Liens are secured by certain of Debtor's pre-petition assets as detailed in the below chart and defined as the "IRS Collateral". The IRS Collateral has a total value of $1,818,859.00. The IRS Collateral is subject to senior liens held by Bank of America and the Georgia Department of Revenue totaling $699,195.67 (as further detailed in Classes 1 and 3) consisting of:

(i)      Bank of America, Class 1A, $193,242.43 securing Debtor's Sugarloaf Property;
(ii)     Bank of America, Class 1B, $40,423.74 securing Debtor's Sugarloaf Property;
(iii)    Bank of America, Class 1C, $4,942.22 securing Debtor's Center Point Property;
(iv)     Bank of America, Class 1D, $208,140.33, securing Debtor's Center Point Property; and
(v)      Georgia Department of Revenue Class 3A, GDR Lien 1, Rev. 11044466 securing Debtor's Sugar Loaf Property and Debtor's personal property (but excluding Debtor's Center Point Property and Debtor's Pleasant Hill Property).

Accordingly, the IRS Lien 1, IRS Lien 2, IRS Lien 3 and IRS Lien 4 (up to a maximum of $89,047.34) shall continue and attach to the IRS Collateral to the same priority and validity as existed on the Filing Date provided that the IRS Lien 1, IRS Lien 2, IRS Lien 3 and IRS Lien 4 (up to a maximum of $89,047.34) shall attach to each specific piece of IRS Collateral only to the extent of the value set forth in "Extent of IRS Lien" column in the below chart.  Accordingly, the IRS Lien 1, IRS Lien 2, IRS Lien 3 and IRS Lien 4 (up to a maximum of $89,047.34) shall each continue to the following total extent:

(i)      $225,535.02 as to the IRS Lien 1:
(ii)     $151,887.22 as to the IRS Lien 2;
(iii)    $653,693.75 as to the IRS Lien 3; and
(iv)     $89,047.34 as to the IRS Lien 4,

but the Class 2A IRS Secured Claim shall only attach to a specific piece of IRS Collateral to the Extent of IRS Lien for a total Class 2A IRS Secured Tax Claim of $1,120,163.33 (the "Class 2A IRS Secured Claim").

**"IRS Collateral" for Class 2A**

| IRS Collateral | Scheduled Value | Security Deed Claims | Value for Tax Liens | GDR 1st Priority Tax Lien i.e. GDR Lien 1 (Rev 11044466) | Extent of IRS Lien |
|---|---|---|---|---|---|
| Center Point Property, Carroll County, GA | $500,000 | $213,082.55 | $286,917.45 | $0 | $286,917.45 |
| 4.07 Acres – Pleasant Hill Road, Carroll County, GA | $19,509 | $0 | $19,509.00 | $0 | $19,509 |
| Sugarloaf Property, Gwinnett County, GA | $1,200,000 | $233,665.94 | $966,334.06 | | $713,886.65 |
| 1993 Prevost | $20,000 | $0 | $20,000.00 | | $20,000 |
| Household Furnishings | $25,000 | $0 | $25,000.00 | | $25,000 |
| Electronics | $1,500 | $0 | $1,500.00 | | $1,500 |
| Memorabilia | $5,000 | $0 | $5,000.00 | | $5,000 |
| Guitars | $6,000 | $0 | $6,000.00 | | $6,000 |
| Sports Equipment | $750 | $0 | $750.00 | | $750 |
| Firearms | $250 | $0 | $250.00 | | $250 |
| Clothing and Shoes | $1,500 | $0 | $1,500.00 | | $1,500 |
| Wedding Ring | $100 | $0 | $100.00 | $252,447.18 | $100 |
| Cash | $37,500 | $0 | $37,500.00 | | $37,500 |
| Peachtree Data, Inc. (50% Interest) | 500 | $0 | $500 | | $500 |
| Savings Account | $1,000 | $0 | $1,000.00 | | $1,000 |
| Checking Account | $750 | $0 | $750.00 | | $750 |
| Guardian Life Insurance | $0 | $0 | $0.00 | | $0 |
| Claim Against Willene S. Morris | 0 | $0 | 0 | | $0 |
| Claim against Joes on Juniper, Hudson Grill Midtown, and Einstein's | 0 | $0 | 0 | | $0 |
| | $1,819,359 | $446,748.49 | $1,372,610.51 | $252,447 | $1,120,163 |

The balance of the IRS Lien 4 in the amount of $1,552,868.64 (i.e. $1,641,915.98 less $89,047.34) and the entirety of the IRS Lien 5, IRS Lien 6, IRS Lien 7, and IRS Lien 8 shall be cancelled, discharged and of no further force or effect as of the Confirmation Date and shall attach to the IRS Collateral to the extent of $0.00 (provided the IRS Lien 4 shall attach to the IRS Collateral to the extent of $89,047.34) and the balance of the IRS asserted secured claim in the amount $1,884,281.84 shall be specifically reclassified and treated as a Class 7 General Unsecured Claim.

Debtor is authorized to sell his assets including the IRS Collateral free and clear of liens and pay the proceeds of such sale in the order of priority of liens as detailed in the Sale Procedures in Article 4.9 of the Plan. The Sale Procedures are adopted in Class 2A and apply to Class 2A as if restated verbatim herein.   Specifically, Debtor is authorized to sell the assets, including the IRS Collateral, free and clear of any asserted IRS Lien, including the Class 2A Secured Claim, and pay any proceeds from the sale of such assets after payment of customary closing costs: (i) first to cover any *ad valorem* or personal property taxes associated with the particular property, (ii) then allowed secured claims in order of priority, to the extent of available proceeds, and (iii) then to fund Debtor's other obligations as set forth in the Plan. The IRS Secured Tax Claim shall only attach to the aforementioned assets to the extent of the value set forth in "Extent of IRS Lien" column. Accordingly, in the event Debtor liquidates, sells or refinances any of the IRS Collateral, the IRS shall release its lien for a payment equivalent to the *lesser* of: (i) the Extent of IRS Lien for the particular asset (ii) the outstanding balance due Class 2A IRS Secured Claim and (iii) the Release Price (defined in the Sale Procedures).

Debtor shall pay the allowed Class 2A IRS Secured Claim from (i) the sale of assets detailed herein, (ii) in equal quarterly payments of $500 each commencing on the 1st day of the first quarter following the Effective Date and continuing on or by the 1st day of each subsequent quarter (or the next Business Day if the 1st day is not a business day) for a period of 4 years, and (iii) through additional principal reduction payments as Debtor may be able to make from any earnings of Debtor or loan proceeds obtained by Debtor. Interest shall accrue on the principal tax due amount of the Allowed Class 2A IRS Secured Claim from the Effective Date at the annual rate of 4% or such lesser rate as (i) agreed to by the IRS or (ii) indicated on the applicable IRS proof of claim. Notwithstanding anything to the contrary herein, Debtor shall pay the balance of the Allowed Class 2A IRS Secured Claim with a balloon payment on the 5-year anniversary of the Filing Date (i.e. September 4, 2022) unless the IRS agrees to a longer payment term, which such agreement may be communicated by continued acceptance of monthly payments after September 4, 2022. Any third-party payments or payments in excess of the scheduled distribution pursuant to Class 2A received by the IRS shall be applied to the principal tax obligation owed by Debtor pursuant to Class 2A. Debtor's Class 2A payments shall be applied (i) first to interest accruing under the Plan and (ii) second to the principal balance.

### 6.2.2    Class 2B IRS Priority Claim

The Class 2B IRS Priority Claim is asserted in the amount of $368,890.55 (the "Allowed Class 2B IRS Priority Claim"). Debtor shall pay the allowed Class 2B IRS Priority Claim in equal quarterly payments of $32,673.00 each commencing on the 1st day of the first anniversary

of the Effective Date and continuing on or by the 1st day of each subsequent quarter (or the next Business Day if the 1st day is not a business day) for a period of 3 years. Interest shall accrue on the principal amount due from the Effective Date at the annual rate of 4% or such lesser rate as (i) agreed to by the IRS or (ii) indicated on the applicable IRS proof of claim. Notwithstanding anything to the contrary herein, Debtor shall pay the balance of the Allowed Class 2B IRS Priority Claim with a balloon payment on the 5-year anniversary of the Filing Date (i.e. September 5, 2022) unless the IRS agrees to a longer payment term. Any third-party payments or payments in excess of the scheduled distribution pursuant to Class 2B received by the IRS shall be applied to the principal tax obligation owed by Debtor pursuant to Class 2B. Debtor's Class 2B payments shall be applied (i) first to interest accruing under the Plan and (ii) second to the principal balance.

### 6.2.3    Class 2C IRS General Unsecured Claim

The IRS proof of claim included a general unsecured in the amount of $42,325.10, and pursuant to reclassification of certain asserted secured claims in Class 2A above, the IRS additionally holds general unsecured claims in the amount of $1,884,281.84. Accordingly, the IRS General Unsecured Claim in the amount of $1,926,606.94 is specifically classified as a Class 7 general unsecured claim and shall be treated and paid as a Class 7 general unsecured claim.

A failure by the Debtor to make a payment under Class 2 to the IRS pursuant to the terms of the Plan shall be an event of default as to the IRS. In the event of a default under Class 2, the IRS must send a Default Notice to Debtor in accordance with Article 2.3 of the Plan. Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default and the address for payment, which will accept overnight deliveries. Receipt by Debtor's Attorney shall not be deemed receipt by Debtor of the required Default Notice. In the event of an uncured default under Class 2 following proper Default Notice procedures and opportunity to cure pursuant to Article 2.3 of the Plan, the IRS may exercise any and all rights and remedies it may have under applicable non-bankruptcy law regarding the Allowed Class 2 IRS Secured and Priority Tax Claims and seek such relief as may be appropriate in the Bankruptcy Court.

The amount of any claim of the IRS that is not otherwise assessable or due and payable on or prior to the Effective Date, and the right of the IRS, if any, to payment in respect thereto shall (i) be determined in the manner in which the amount of such Claim and the rights of the IRS would have been resolved or adjudicated if the Bankruptcy Case had not been commenced, (ii) survive after the Effective Date as if the Bankruptcy Case had not been commenced, and (iii) not be discharged pursuant to section 1141 of the Bankruptcy Code. However, the rights and treatment of the IRS and obligations and liability of Debtor or its property regarding any claim of the IRS against Debtor which was assessable or due and payable prior to the Effective Date shall be treated and fixed in accordance with the Plan, and any additional or other claims assessable or due and payable prior to the Effective Date and not timely asserted by the IRS in accordance with the Bankruptcy Code and the Plan and in all instances prior to entry of the Confirmation Order, shall be forever barred. Debtor reserves the right to pay any tax claim in full at any time.

The Claim of the Class 2 Creditor is Impaired by the Plan and the holder of the Class 2 Claim is entitled to vote to accept or reject the Plan. Nothing herein shall constitute an admission as to the nature, validity, or amount of such claim. Debtor reserves the right to object to any and all claims.

### 6.3    Class 3:    Secured or Priority Tax Claim of Georgia Department of Revenue

The Georgia Department of Revenue ("GDR") filed proof of claim number 2 on October 10, 2017 in the amount of $710,544.86 consisting of (i) an asserted secured claim in the amount of $371,044.28 (the "Asserted GDR Secured Claim"), (ii) an asserted priority unsecured claim in the amount of $281,956.04 (the "Asserted GDR Priority Tax Claim") and (ii) an asserted general unsecured claim in the amount of $57,544.54 (the "Asserted GDR General Unsecured Claim").

The Court established November 17, 2017 as the Bar Date for filing proofs of claim. Any claim asserted or assertable by the GDR on or before the Filing Date or treated as arising prior to the Filing Date pursuant to 11 U.S.C. §502(i) but not asserted by the IRS by the Bar Date shall: (i) be time barred and fixed as provided in the Plan and (ii) any other, additional or amended claim assessable on or prior to the Filing Date shall be disallowed in its entirety and forever discharged.  Debtor shall pay any claim of the GDR assessable, arising prior to the Filing Date or treated as arising prior to the Filing Date pursuant to 11 U.S.C. §502(i) on the terms herein, and the GDR shall be permanently enjoined from seeking payment in excess of the amounts provided for in the Plan for such claims.

#### 6.3.1    Class 3A GDR Secured Claim

The Asserted GDR Secured Claim is based on the following asserted GDR Tax Liens attached to the GDR proof of claim listed in the order of priority:

| GDR Tax Lien | Tax Period | Lien Recorded | County Recorded | Book and Page | Amount | Execution # |
|---|---|---|---|---|---|---|
| "GDR LIEN 1" | 2007 | 4/12/2011 | Gwinnett | Book: 3291 Page: 270 | $252,447.18 | REV 11044466 |
| "GDR LIEN 2" | 2010 | 1/16/2015 | Gwinnett | Book: 4316 Page: 220 | $102,802.20 | REV 140332379 |
| "GDR LIEN 3" | 2015 | 4/10/2017 | Gwinnett | Book: 4831 Page: 201 | $69.738.43 | REV 160411782 |

The GDR Tax Liens are secured by certain of Debtor's pre-petition assets as detailed below and defined as the "GDR Collateral". The GDR Collateral has a total value of $1,299,850.00. The GDR Collateral is subject to senior liens held by Bank of America totaling $233,665.94 (as further detailed in Class 1). Additionally, as to GDR Lien 2 and GDR Lien 3, the GDR Collateral is subject to asserted senior liens held by the Internal Revenue Service totaling $3,004,445.17 (as detailed in Class 3) consisting of:

      (vi)     Bank of America, Class 1A, $193,242.43 securing Debtor's Sugarloaf Property;
      (vii)    Bank of America, Class 1B, $40,423.74 securing Debtor's Sugarloaf Property;
      (viii)   Internal Revenue Service, Asserted IRS Secured Claim $3,004,445.17.

Accordingly, the GDR Lien 1 shall continue and attach to the GDR Collateral to the same priority and validity as existed on the Filing Date provided that the GDR Lien 1 shall attach to each specific piece of GDR Collateral only to the extent of the value set forth in "Extent of GDR 1st Priority Lien" column below, for a total Class 3A GDR Secured Tax Claim of $252,447.18 (the "Class 3A GDR Secured Claim").

### "GDR Collateral" for Class 3A

| GDR Collateral | Scheduled Value | Security Deed Claims | Extent of GDR 1st Priority Lien (i.e. GDR Lien 1, Rev 11044466) | IRS 2nd Priority Tax Liens | Value for GDR Junior Priority Liens |
|---|---|---|---|---|---|
| Sugarloaf Property, Gwinnett County, GA | $1,200,000 | $233,665.94 | $252,447.18 | | -$2,290,558.29 |
| 1993 Prevost | $20,000 | $0 | $20,000.00 | | -$3,004,445.17 |
| Household Furnishings | $25,000 | $0 | $25,000.00 | | -$3,004,445.17 |
| Electronics | $1,500 | $0 | $1,500.00 | | -$3,004,445.17 |
| Memorabilia | $5,000 | $0 | $5,000.00 | | -$3,004,445.17 |
| Guitars | $6,000 | $0 | $6,000.00 | $3,004,445.17 | -$3,004,445.17 |
| Sports Equipment | $750 | $0 | $750.00 | | -$3,004,445.17 |
| Firearms | $250 | $0 | $250.00 | | -$3,004,445.17 |
| Clothing and Shoes | $1,500 | $0 | $1,500.00 | | -$3,004,445.17 |
| Wedding Ring | $100 | $0 | $100.00 | | -$3,004,445.17 |
| Cash | $37,500 | $0 | $37,500.00 | | -$3,004,445.17 |
| Peachtree Data, Inc. (50% Interest) | 500 | $0 | 500 | | -$3,004,445.17 |

| GDR Collateral | Scheduled Value | Security Deed | Extent of GDR 1st | IRS 2nd Priority Tax | Value for GDR Junior |
|---|---|---|---|---|---|
| Savings Account | $1,000 | $0 | $1,000.00 | | -$3,004,445.17 |
| Checking Account | $750 | $0 | $750.00 | | -$3,004,445.17 |
| Guardian Life Insurance | $0 | $0 | $0.00 | | -$3,004,445.17 |
| Claim Against Willene S. Morris | 0 | $0 | 0 | | -$3,004,445.17 |
| Claim against Joes on Juniper, Hudson Grill Midtown, and Einstein's | 0 | $0 | 0 | | -$3,004,445.17 |
| | $1,299,850 | $233,666 | $352,297 | $3,004,445.17 | $0.00 |

The GDR Lien 2 and GDR Lien 3 (The "GDR Junior Priority Liens") shall be cancelled, discharged and of no further force or effect as of the Confirmation Date and shall attach to the GDR Collateral to the extent of $0.00 and the balance of the GDR asserted secured claim in the amount $172,540.63 shall be specifically reclassified and treated as a Class 7 General Unsecured Claim.

Debtor is authorized to sell his assets including the GDR Collateral free and clear of liens and pay the proceeds of such sale in the order of priority of lien as detailed in the Sale Procedures in Article 4.9 of the Plan. The Sale Procedures are adopted in Class 3A and apply to Class 3A as if restated verbatim herein. Specifically, Debtor is authorized to sell the assets, including the GDR Collateral, free and clear of any asserted GDR Lien, including the Class 3A Secured Claim and GDR Lien 1, and pay any proceeds from the sale of such assets after payment of customary closing costs: (i) first to cover any *ad valorem* or personal property taxes associated with the particular property, (ii) then allowed secured claims in order of priority, to the extent of available proceeds, and (iii) then to fund Debtor's other obligations as set forth in the Plan. The GDR Secured Tax Claim shall only attach to the aforementioned assets to the extent of the value set forth in "Extent of GDR 1st Priority Lien" column. Accordingly, in the event Debtor liquidates, sells or refinances any of the GDR Collateral, the GDR shall release its lien for a payment equivalent to the *lesser* of: (i) the Extent of GDR 1st Priority Lien for the particular asset (ii) the outstanding Class 3A GDR Secured Claim and (iii) the Release Price (defined in the Sale Procedures).

Debtor shall pay the allowed Class 3A GDR Secured Claim from (i) the sale of assets detailed herein, (ii) in equal quarterly payments of $500 each commencing on the 1st day of the first quarter following the Effective Date and continuing on or by the 1st day of each subsequent quarter (or the next Business Day if the 1st day is not a business day) for a period of 4 years and (iii) through additional principal reduction payments as Debtor may be able to make from any earnings of Debtor or loan proceeds obtained by Debtor. Interest shall accrue on the principal tax due amount of the Allowed Class 3A GDR Secured Claim from the Effective Date at the

annual rate of 7.75% or such lesser rate as (i) agreed to by the GDR or (ii) indicated on the applicable GDR proof of claim.  Notwithstanding anything to the contrary herein, Debtor shall pay the balance of the Allowed Class 3A GDR Secured Claim with a balloon payment on the 5-year anniversary of the Filing Date (i.e. September 4, 2022) unless the GDR agrees to a longer payment term, which such agreement may be communicated by continued acceptance of monthly payments after September 4, 2022.  Any third-party payments or payments in excess of the scheduled distribution pursuant to Class 3A received by the GDR shall be applied to the principal tax obligation owed by Debtor pursuant to Class 3A.  Debtor's Class 3A payments shall be applied (i) first to interest accruing under the Plan, (ii) second to the principal balance and (iii) then to interest which accrued prior to the Filing Date.

### 6.3.2   Class 3B GDR Priority Claim

The Class 3B GDR Priority Claim is asserted in the amount of $281,956.04 (the "Class 3B GDR Priority Claim").  Debtor shall pay the allowed Class 3B GDR Priority Claim in equal quarterly payments of $26,409.00 each commencing on the 1st day of the first anniversary of the Effective Date and continuing by the 1st day of each subsequent quarter (or the next Business Day if the 1st day is not a business day) for a period of 3 years.  Interest shall accrue on the principal amount due from the Effective Date at the annual rate of 7.75% or such lesser rate as (i) agreed to by the GDR or (ii) indicated on the applicable GDR proof of claim.  Notwithstanding anything to the contrary herein, Debtor shall pay the balance of the allowed Class 3B GDR Priority Claim with a balloon payment on the 5 year anniversary of the Filing Date (i.e. September 4, 2022) unless the GDR agrees to a longer payment term.  Any third-party payments or payments in excess of the scheduled distribution pursuant to Class 3B received by the GDR shall be applied to the principal tax obligation owed by Debtor pursuant to Class 3B.  Debtor's Class 3B payments shall be applied (i) first to interest accruing under the Plan, (ii) second to the principal balance and (iii) then to interest which accrued prior to the Filing Date.

### 6.3.3   Class 3C GDR General Unsecured Claim

The GDR proof of claim included a general unsecured in the amount of $76,791.64, and pursuant to reclassification of certain asserted secured claims in Class 3A above, the GDR additionally holds general unsecured claims in the amount of $172,540.63.  Accordingly, the GDR General Unsecured Claim in the amount of $249,332.27 is specifically classified as a Class 7 general unsecured claim and shall be treated and paid as a Class 7 general unsecured claim.

A failure by the Debtor to make a payment under Class 3 to the GDR pursuant to the terms of the Plan shall be an event of default as to the GDR.  In the event of a default under Class 3, the GDR must send a Default Notice to Debtor in accordance with Article 2.3 of the Plan. Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default and the address for payment, which will accept overnight deliveries.  Receipt by Debtor's Attorney shall not be deemed receipt by Debtor of the required Default Notice.  In the event of an uncured default following proper Default Notice procedures and opportunity to cure pursuant to Article 2.3 of the Plan, the GDR may exercise any and all rights and remedies it may have under applicable non-bankruptcy

law regarding the allowed Class 3 GDR Secured and Priority Tax Claims and seek such relief as may be appropriate in the Bankruptcy Court.

The amount of any claim of the GDR that is not otherwise assessable or due and payable on or prior to the Effective Date, and the right of the GDR, if any, to payment in respect thereto shall (i) be determined in the manner in which the amount of such Claim and the rights of the GDR would have been resolved or adjudicated if the Bankruptcy Case had not been commenced, (ii) survive after the Effective Date as if the Bankruptcy Case had not been commenced, and (iii) not be discharged pursuant to section 1141 of the Bankruptcy Code. However, the rights and treatment of the GDR and obligations and liability of Debtor or its property regarding any claim of the GDR against Debtor which was assessable or due and payable prior to the Effective Date shall be treated and fixed in accordance with the Plan, and any additional or other claims assessable or due and payable prior to the Effective Date and not timely asserted by the GDR in accordance with the Bankruptcy Code and the Plan and in all instances prior to entry of the Confirmation Order, shall be forever barred. Debtor reserves the right to pay any tax claim in full at any time.

The Claim of the Class 3 Creditor is Impaired by the Plan and the holder of the Class 3 Claim is entitled to vote to accept or reject the Plan. Nothing herein shall constitute an admission as to the nature, validity, or amount of such claim. Debtor reserves the right to object to any and all claims.

**6.4    Class 4:        Priority and Secured Tax Claims of Carroll County, Georgia**

The Carroll County Tax Commissioner ("Carroll County") filed proof of claim number 5 on November 1, 2017 in the amount of $2,152.77 (the "Class 4 Carroll County Tax Claim") consisting of ad valorem taxes and charges for year 2017 for the Center Point Property and 4.07 Acres on Pleasant Hill Rd. Debtor shall pay the Class 4 Carroll County Tax Claim in four equal quarterly installments beginning on the Effective Date and continuing on the first day of the following quarter for a total of 4 payments. (or the next Business Day if the first day is not a Business Day), with interest accruing at the annual rate of 7.75% (or at the rate otherwise as required by the Bankruptcy Code), with a final balloon payment on the 5th anniversary of the Filing Date (i.e. September 5, 2022). Debtor reserves the right to pay the Class 4 Carroll County Tax Claim in full at any time.

A failure by the Debtor to make a payment under Class 4 to Carroll County pursuant to the terms of the Plan shall be an event of default as to Carroll County. In the event of a default under Class 4, Carroll County must send a Default Notice to Debtor in accordance with Article 2.3 of the Plan in order to exercise default remedies. Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default and the address for payment, which will accept overnight deliveries, in the event of a monetary default. Receipt by Debtor's Attorney shall not be deemed receipt by Debtor of the required Default Notice. In the event of an uncured default following proper Default Notice procedures and opportunity to cure pursuant to Article 2.3 of the Plan, Carroll County may (a) enforce the entire amount of its then outstanding allowed Class 4 Carroll County

Tax Claim; (b) exercise any and all rights and remedies it may have under applicable non-bankruptcy law regarding the allowed Class 4 Carroll County Tax Claim; and (c) seek such relief as may be appropriate in the Bankruptcy Court.

The amount of any claim of Carroll County that is not otherwise assessable or due and payable on or prior to the Effective Date, and the right of the Carroll County, if any, to payment in respect thereto shall (i) be determined in the manner in which the amount of such Claim and the rights of the Carroll County would have been resolved or adjudicated if the Bankruptcy Case had not been commenced, (ii) survive after the Effective Date as if the Bankruptcy Case had not been commenced, and (iii) not be discharged pursuant to section 1141 of the Bankruptcy Code. However, the rights and treatment of Carroll County and obligations and liability of Debtor or its property regarding any claim of Carroll County against Debtor which was assessable or due and payable prior to the Effective Date shall be treated and fixed in accordance with the Plan, and any additional or other claims assessable or due and payable prior to the Effective Date and not timely asserted by Carroll County in accordance with the Bankruptcy Code and the Plan and in all instances prior to entry of the Confirmation Order, shall be forever barred. Debtor reserves the right to pay any tax claim in full at any time.

The Claim of the Class 4 Creditor is Impaired by the Plan and the holder of the Class 4 Claim is entitled to vote to accept or reject the Plan. Nothing herein shall constitute an admission as to the nature, validity, or amount of such claim. Debtor reserves the right to object to any and all claims.

### 6.5    Class 5:        Priority and Secured Tax Claims of Governmental Units

Class 5 shall consist of any Priority or Secured Claim of a governmental unit entitled to priority under 11 U.S.C. §507(a)(8), which are not otherwise specifically classified in the Plan ("Class 5 Governmental Unit Tax Claim"). Debtor is not aware of any Holders of Class 5 Governmental Unit Tax Claim not otherwise classified in the Plan. In the event there are Allowed Holders of Class 5 Governmental Unit Tax Claims, Debtor shall pay such Allowed Class 5 Government Unit Tax Claim at the rate of $100 per month commencing on the Effective Date and continuing by the 28th day of each subsequent month (or the next Business Day if the 28th day is not a Business Day), with interest accruing at the annual rate of 3.5% (or at the rate otherwise as required by the Bankruptcy Code), with a final balloon payment on the 5th anniversary of the Filing Date (i.e. August 2, 2021). Debtor reserves the right to pay any Class 5 Governmental Unit Tax Claim in full at any time.

A failure by the Debtor to make a payment under Class 5 to the Holder of a Class 5 Governmental Unit Tax Claim pursuant to the terms of the Plan shall be an event of default as to such Governmental Unit. In the event of a default under Class 5, the Holder of a Class 5 Governmental Unit Tax Claim must send a Default Notice to Debtor in accordance with Article 2.3 of the Plan in order to exercise the default remedies. Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default and the address for payment, which will accept overnight deliveries. Receipt by Debtor's Attorney shall not be deemed receipt by Debtor of the required Default

Notice. In the event of an uncured default following proper Default Notice procedures and opportunity to cure pursuant to Article 2.3 of the Plan, the Holder of a Class 5 Governmental Unit Tax Claim may (a) enforce the entire amount of its then outstanding Allowed Class 5 Governmental Unit Tax Claim; (b) exercise any and all rights and remedies it may have under applicable non-bankruptcy law regarding the Allowed Class Governmental Unit Tax Claim; and (c) seek such relief as may be appropriate in the Bankruptcy Court.

The amount of any claim of a governmental unit that is not assessed or assessable on or prior to the Effective Date, and the right of the particular governmental unit, if any, to payment in respect thereto shall (i) be determined in the manner in which the amount of such Claim and the rights of the particular governmental unit would have been resolved or adjudicated if the Bankruptcy Case had not been commenced, (ii) survive after the Effective Date as if the Bankruptcy Case had not been commenced, and (iii) not be discharged pursuant to section 1141 of the Bankruptcy Code if applicable. However, the rights and treatment of a governmental unit and obligations and liability of Debtor or its property regarding any claim of a governmental unit against Debtor which was assessable or due and payable prior to the Effective Date shall be treated and fixed in accordance with the Plan, and any additional, other or amended claims assessable or due and payable prior to the Effective Date and not timely asserted or amended by a governmental unit in accordance with the Bankruptcy Code and the Plan and in all instances prior to entry of the Confirmation Order, shall be forever barred. Debtor reserves the right to pay any tax claim in full at any time.

The Holder of an Allowed Class 5 Governmental Unit Priority Tax Claim is impaired and entitled to vote to accept or reject the Plan. Nothing contained herein shall prohibit Debtor from objecting to the Class 5 Claims for any reason.

### 6.6    Class 6:         Priority and Secured Tax Claims of Gwinnett County, Georgia

The Gwinnett County Tax Commissioner ("Gwinnett County") holds a claim in the approximate amount of $15,465.18 (the "Class 6 Gwinnett County Tax Claim") consisting of ad valorem taxes and charges for year 2017 for the Sugarloaf Property, Debtor shall pay such allowed Class 6 Gwinnett County Tax Claim at the rate of $407 per month commencing on the Effective Date and continuing by the 28th day of each subsequent month (or the next Business Day if the 28th day is not a Business Day), with interest accruing at the annual rate of 7.75% (or at the rate otherwise as required by the Bankruptcy Code), with a final balloon payment on the 5th anniversary of the Filing Date (i.e. September 5, 2022). Debtor reserves the right to pay the Class 6 Gwinnett County Tax Claim in full at any time.

A failure by the Debtor to make a payment under Class 6 to Gwinnett County pursuant to the terms of the Plan shall be an event of default as to Gwinnett County. In the event of a default under Class 6, Gwinnett County must send a Default Notice to Debtor in accordance with Article 2.3 of the Plan. Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default and the address for payment, which will accept overnight deliveries, in the event of a monetary default. Receipt by Debtor's Attorney shall not be deemed receipt by Debtor of the required Default Notice. In the

event of an uncured default following proper Default Notice procedures and opportunity to cure pursuant to Article 2.3 of the Plan, Gwinnett County may (a) enforce the entire amount of its then outstanding allowed Class 6 Gwinnett County Tax Claim; (b) exercise any and all rights and remedies it may have under applicable non-bankruptcy law regarding the allowed Class 6 Gwinnett County Tax Claim; and (c) seek such relief as may be appropriate in the Bankruptcy Court.

The amount of any claim of Gwinnett County that is not otherwise assessable or due and payable on or prior to the Effective Date, and the right of the Gwinnett County, if any, to payment in respect thereto shall (i) be determined in the manner in which the amount of such Claim and the rights of the Gwinnett County would have been resolved or adjudicated if the Bankruptcy Case had not been commenced, (ii) survive after the Effective Date as if the Bankruptcy Case had not been commenced, and (iii) not be discharged pursuant to section 1141 of the Bankruptcy Code. However, the rights and treatment of Gwinnett County and obligations and liability of Debtor or its property regarding any claim of Gwinnett County against Debtor which was assessable or due and payable prior to the Effective Date shall be treated and fixed in accordance with the Plan, and any additional or other claims assessable or due and payable prior to the Effective Date and not timely asserted by Gwinnett County in accordance with the Bankruptcy Code and the Plan and in all instances prior to entry of the Confirmation Order, shall be forever barred. Debtor reserves the right to pay any tax claim in full at any time.

The Claim of the Class 6 Creditor is Impaired by the Plan and the holder of the Class 6 Claim is entitled to vote to accept or reject the Plan. Nothing herein shall constitute an admission as to the nature, validity, or amount of such claim. Debtor reserves the right to object to any and all claims.

### 6.7    Class 7:        General Unsecured Claims

Class 7 shall consist of the general unsecured claims including deficiency claims pursuant to 11 U.S.C. §§ 506 and 522(f). Debtor shall pay the General Unsecured Creditors a pro-rata share of $200,000.00 paid in 4 quarterly payments of $50,000.00 each, commencing on the 1st day of the 1st quarter of the 4th anniversary of Effective Date and continuing on or by the 1st day of each subsequent quarter for a total of 4 payments. Debtor anticipates, but does not warrant, the following Holders of Class 7 General Unsecured Claims and the following distributions:

| Anticipated Holders | Est. Claim | Quarterly Distrib. | Total Distrib. |
|---|---|---|---|
| Atlanta Sports Restaurant, LLC | $0.00[2] | $0.00 | $0.00 |
| Atlanta's Best Patio, LLC | $0.00[3] | $0.00 | $0.00 |

[2] Debtor scheduled Atlanta Sports Restaurants, LLC ("ASR") as disputed and no proof of claim was filed by the Claims Bar Date. Accordingly, ASR's Class 7 General Unsecured Claim is $0.00.

[3] Debtor scheduled Atlanta's Best Patio, LLC ("ABP") as disputed and no proof of claim was filed by the Claims Bar Date. Accordingly, ABP's Class 7 General Unsecured Claim is $0.00.

| Anticipated Holders | Est. Claim | Quarterly Distrib. | Total Distrib. |
|---|---|---|---|
| Bank of America | $23,500.00 | $432.91 | $1,731.62 |
| Eat At Joe's, LLC | $0.00[4] | $0.00 | $0.00 |
| Georgia Department of Revenue | $249,332.72 | $4,593.09 | $18,372.36 |
| Internal Revenue Service | $1,926,606.90 | $35,491.05 | $141,964.18 |
| John Flood | $109,387.00 | $2,015.08 | $8,060.30 |
| Steve Mudder | $355,388.82 | $6,546.81 | $26,187.22 |
| Vesta Ayers | $50,000.00 | $921.08 | $3,684.31 |
| **Total** | **$2,714,215.44** | **$50,000.00** | **$200,000.00** |

The Claims of the Class 7 Creditors are Impaired by the Plan and the holders of a Class 7 Claim are entitled to vote to accept or reject the Plan.

Nothing herein shall constitute an admission as to the nature, validity, or amount of a claim. Debtor reserves the right to object to any and all claims.

### 6.8    Class 8: Debtor's Interest and New Value

Debtor shall retain all of Debtor's assets free and clear of any claims, liens or encumbrances except as specifically set forth in the Plan.  In the event that Class 7 does not vote to accept the Plan as a class, and the Court determines the "absolute priority rule[5]" is applicable in this Bankruptcy Case, Debtor proposes the following "new value."  Debtor shall contribute $25,000.00 of non-bankruptcy estate property, or such other amount as the Court shall deem necessary and appropriate, as new value. Specifically, Debtor shall obtain $25,000.00 to contribute as "new value" to Debtor's obligations under the Plan by one or a combination of the following sources: obtaining a gift of such funds from Debtor's wife or other relative of Debtor. Debtor's contribution of "new value" under the Plan shall also include Debtor's payments of administrative expenses and payments to unsecured creditors under the Plan. New value is the vehicle through which current equity holders purchase the equity interest of the reorganized Debtor; or in the case of an individual debtor, the individual "purchases" Debtor's retained assets back from the Bankruptcy Estate.  Efforts of the Debtor to retain the retained assets may be

---

[4] Debtor scheduled Eat at Joe's, LLC ("EAJ") as disputed and no proof of claim was filed by the Claims Bar Date. Accordingly, EAJ's Class 7 General Unsecured Claim is $0.00.

[5] Debtor shows that the absolute priority rule is not applicable to individual chapter 11 cases. However, a split of authority exists on this issue. To the extent the absolute priority rule is deemed applicable, Debtor provides this provision which shall be applicable only in such event. Debtor does not waive the right to show that the absolute priority rule is not applicable to individual chapter 11 cases following the 2005 amendments to the Bankruptcy Code including 11 U.S.C. §1115.

subject to competing bids in the market place under certain circumstances. Specifically if the classes of unsecured claims do not vote to accept the Plan as a class as set forth in this provision, then, in that event third parties may be able to purchase the retained assets of the Debtor, subject to the Debtor's exemptions, if any, by appearing at the confirmation hearing and submitting a higher bid for the assets subject to the terms of this Plan. The requirement for, sufficiency and validity of any such bid shall be subject to the approval and review of the Court at the Confirmation Hearing. Any New Value contributed by Debtor or on Debtor's behalf will be distributed in accordance with the priorities set forth in the Bankruptcy Code.

### 6.9    Sale Procedures

After the Confirmation Date, Debtor is authorized to sell or refinance his assets, specifically including his real and personal property, free and clear of liens, claims and encumbrances as set forth herein (the "Sale Procedures"). In the event the applicable assets are subject to secured claims, Debtor is authorized to sell or refinance such property free and clear of liens, claims and encumbrances on the following terms:

Debtor may sell or refinance such property for any amount (a release amount) that is at least equal to the lesser of: (a) the Fair Market Value and (b) the outstanding amount of Allowed Secured Claims securing such property[6].

Such amounts are referred to in the Plan as the "Release Amount." Unless the Court specifically establishes the value of a particular asset at the Confirmation Hearing and such value is set forth in the Confirmation Order, the Fair Market Value will be the Value provided as the "Scheduled Value" as set forth in Class 2A and 3A of the Plan and the "Pre Liquidation Value" in the Liquidation Analysis of the Disclosure Statement. The Release Amount, after payment of customary closing costs including broker fees and other items customarily attributed to the seller (in a sale) and borrower (in a refinancing), shall be paid as follows: (i) first to cover any *ad valorem* or personal property taxes associated with the particular asset, (ii) then secured claims in order of priority, to the extent of available proceeds, and (iii) then to fund Debtor's other obligations as set forth in the Plan. To the extent that any Allowed Secured Claim is not satisfied and paid in full pursuant to the provision of the Sale Procedures set forth in Article 4.9 of the Plan, such unpaid amount shall be provided for and paid as General Unsecured Claim in Class 7.

## VII.    Administrative Expenses

Treatment of administrative expense claims is set forth in Article 5 of the Plan and summarized below.

---

[6] In the event of a sale or refinancing of IRS Collateral or GDR Collateral, the correlating Extent of IRS Lien and Extent of GDR 1st Priority Lien shall be the applicable Allowed Secured Claim for purpose of analyzing the Release Amount rather than the total Class 2A IRS Secured Claim and Class 3A GDR Secured Claim.

7.1    <u>Summary</u>.    Pursuant to Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims against Debtor are not classified for purposes of voting on or receiving distributions under this Plan.  Holders of such Claims are not entitled to vote on this Plan.  All such claims are instead treated separately in accordance with Article 5 of the Plan and in accordance with the requirements set forth in Section 1129(a)(9)(A) of the Bankruptcy Code.

With respect to potential Administrative Expense Claims, Debtor, pursuant to Court order, retained the law firm of Jones & Walden, LLC ("Firm") to serve as bankruptcy counsel. As set forth in the employment application and supporting documents, the Firm received a prepetition retainer in the amount of $20,000.00.  As of the date hereof, the fees and expenses incurred by the Firm have exceeded the retainer.  Debtor shall pay any unpaid allowed Administrative Expense Claim held by the Firm on the Effective Date unless otherwise agreed to by the Firm.  Debtor is paying post-petition bills and does not expect any claims for unpaid post-petition goods and services other than possible professional fees.  Debtor will incur quarterly trustee fees which Debtor intends to pay when due.

7.2    <u>Administrative Expense Claims</u>.

7.2.1    Subject to the provisions of sections 328, 330(a) and 331 of the Bankruptcy Code, each holder of an Allowed Administrative Expense Claim will be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash on the latest of (i) the Effective Date, (ii) as soon as practicable after the date on which such Claim becomes an Allowed Administrative Expense Claim, (iii) upon such other terms as may be agreed upon by such holder and Debtor, or (iv) as otherwise ordered by the Bankruptcy Court; provided, however, that Allowed Administrative Expense Claims representing obligations incurred by Debtor in the ordinary course of business after the Filing Date, or otherwise assumed by Debtor on the Effective Date pursuant to this Plan, including any tax obligations arising after the Effective Date, will be paid or performed by Debtor when due in accordance with the terms and conditions of the particular agreements or non-bankruptcy law governing such obligations.

7.2.2    Except as otherwise provided in this Plan, any Person holding an Administrative Expense Claim, other than an Administrative Expense Claim arising from the operation by Debtor of its business in the ordinary course of business, shall file a proof of such Administrative Expense Claim with the Bankruptcy Court within thirty (30) days after the Confirmation Date.  At the same time any Person files an Administrative Expense Claim, such Person shall also serve a copy of the Administrative Expense Claim upon counsel for Debtor. Any Person who fails to timely file and serve a proof of such Administrative Expense Claim shall be forever barred from seeking payment of such Administrative Expense Claims by Debtor or the Estate.

7.2.3    Any Person seeking an award by the Bankruptcy Court of Professional Compensation shall file a final application with the Bankruptcy Court for allowance of Professional Compensation for services rendered and reimbursement of expenses incurred through the Confirmation Date within thirty (30) days after the Confirmation Date or by such other deadline as may be fixed by the Bankruptcy Court.

Debtor may pay professional fees incurred after confirmation of the Plan without Court approval. Debtor shall pay all pre-confirmation fees of professionals as payment of same is approved by the Court.

## VIII.   Tax Consequences

Tax consequences resulting from confirmation of the Plan can vary greatly among the various Classes of Creditors and Holders of Interests, or within each Class. Significant tax consequences may occur as a result of confirmation of the Plan under the Internal Revenue Code and pursuant to state, local, and foreign tax statutes. Because of the various tax issues involved, the differences in the nature of the Claims of various Creditors, the taxpayer status and methods of accounting and prior actions taken by Creditors with respect to their Claims, as well as the possibility that events subsequent to the date hereof could change the tax consequences, this discussion is intended to be general in nature only. No specific tax consequences to any Creditor are represented, implied, or warranted.

**The proponent assumes no responsibility for the tax effect that consummation of the Plan will have on any given Holder of a Claim or Interest. Holders of Claims or Interest are strongly urged to consult their own tax advisors covering the federal, state, local and foreign tax consequences of the Plan to their individual situation.**

## IX.   Debtor's Operations After the Filing Date

Debtor has and will continue to receive income from the businesses in which Debtor holds an ownership interest after the Filing Date and has and will continue to conduct Debtor's affairs as a debtor in possession in accordance with Sections 1107 and 1108 of the Bankruptcy Code since the Petition Date.

## X.   Liquidation Analysis

Debtor's Plan provides Debtor the right to pay unsecured creditors from post-petition income. In the event Debtor's estate is liquidated, the unsecured creditors would not receive anything as Debtor's assets are fully encumbered. Conversion and liquidation under Chapter 7 of the Bankruptcy Code would result in the appointment of a Chapter 7 trustee and the liquidation of non-exempt assets. Additionally, Debtor's post-petition income would not be property of the Chapter 7 estate. As set forth above, Debtor intends on using such income to fund the Plan. Assets disposed of by "liquidation" or "fire" sale generally generate significantly less proceeds than assets that are marketed and sold as a going concern, especially stock in a closely held business. The details of Debtor's liquidation analysis are set forth below:

## Schedule A Real Property Liquidation

| Property | Pre-Liquidation Value | Liquidation Value | Broker Fees | Ad Valorem Taxes | Secured Creditors | Exemption | Net Proceeds |
|---|---|---|---|---|---|---|---|
| 1800 Sugarloaf Club Drive | $1,200,000 | $900,000 | $54,000 | $15,465.18 | $3,632,677.03 | $21,500 | $0 |
| Center Point Property | $600,000 | $450,000 | $27,000 | $1,947.21 | $3,632,677.03 | $0 | $0 |
| 4.07 Acres Pleasant Hill | $19,509 | $14,631.75 | $877.90 | $625 | $3,371,000.00 | $0 | $0 |
| TOTALS | | | | | | | $0 |

## Schedule B Property Liquidation

| Property | Scheduled Value | GDR Tax Lien Creditor | Net Proceeds |
|---|---|---|---|
| 1993 Prevost | $20,000 | $252,447.18 | $0 |
| Household Furnishings | $25,000 | $252,447.18 | $0 |
| Electronics | $1,500 | $252,447.18 | $0 |
| Memorabilia | $5,000 | $252,447.18 | $0 |
| Guitars | $6,000 | $252,447.18 | $0 |
| Sports Equipment | $750 | $252,447.18 | $0 |
| Firearms | $250 | $252,447.18 | $0 |
| Clothing and Shoes | $1,500 | $252,447.18 | $0 |
| Wedding Ring | $100 | $252,447.18 | $0 |
| Cash | $37,500 | $252,447.18 | $0 |
| Peachtree Data, Inc. (50% Interest) | unknown | $252,447.18 | $0 |
| Savings Account | $1,000 | $252,447.18 | $0 |
| Checking Account | $750 | $252,447.18 | $0 |
| Guardian Life Insurance | $0 | $252,447.18 | $0 |
| Claim Against Willene S. Morris | Unknown | $252,447.18 | $0 |
| Claim against Joes on Juniper, Hudson Grill Midtown, and Einsteins | Unknown | $252,447.18 | $0 |
| Total Before IRS Lien | $99,350 | $252,447.18 | $0 |
| IRS Lien | | $2,729,163.79 | $0 |

Debtor's Plan proposes to pay holder of Class 7 General Unsecured Claims a pro-rata share of $200,000.00 which is greater than any return such holders would receive in liquidation.

## XI. Procedures for Treating and Resolving Disputed Claims

### A. Objection To Claims

Debtor shall be entitled to object to Claims, provided, however, that Debtor shall not be entitled to object to Claims (i) that have been Allowed by a Final Order entered by the Bankruptcy Court prior to the Effective Date, or (ii) that are Allowed by the express terms of this Plan.

### B. No Distributions Pending Allowance

Except as otherwise provided herein, no Distributions will be made with respect to any portion of a Claim unless and until (i) no objection to such Claim has been filed, or (ii) any objection to such Claim has been settled, withdrawn or overruled pursuant to a Final Order of the Bankruptcy Court

### C. Estimation of Claims

Debtor may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to the Bankruptcy Code regardless of whether Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, Debtor may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and are not necessarily exclusive of one another.

### D. Resolution of Claims Objections

On and after the Effective Date, Debtor shall have the authority to compromise, settle, otherwise resolve, or withdraw any objections to Claims without approval of the Bankruptcy Court.

## XII.    Conditions Precedent to the Effective Date

### A.    Conditions to Effective Date

The following are conditions precedent to the occurrence of the Effective Date, each of which may be satisfied or waived in accordance with Article 11.1 of the Plan.

> (a)    The Confirmation Order shall not have been vacated, reversed or modified and, as of the Effective Date, shall not be stayed.

> (b)    All documents and agreements to be executed on the Effective Date or otherwise necessary to implement the Plan shall be in form and substance that is acceptable to Debtor in its reasonable discretion.

Under the Plan, each of the conditions set forth above may be waived, in whole or in part, by Debtor without any notice to any other parties in interest or the Bankruptcy Court and without a hearing.  The failure to satisfy or waive any condition to the Confirmation Date or the Effective Date may be asserted by Debtor in Debtor's sole discretion regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by Debtor in Debtor's sole discretion).  The failure of Debtor to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

## XIII.    Certain Effects of Confirmation

### A.    Vesting of Debtor's Assets

Except as otherwise explicitly provided in the Plan, upon the Court's entry of the Confirmation Order, all property comprising the Estate (including Retained Actions, but excluding property that has been abandoned pursuant to an order of the Bankruptcy Court) shall revest in Debtor free and clear of all Claims, Liens, charges, encumbrances, rights and Interests of creditors and equity security holders, except as specifically provided in the Plan.  As of the earlier of the Effective Date and the entry of a Final Decree, Debtor may operate its business and use, acquire, and dispose of property and settle and compromise Claims or Interests without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and Confirmation Order.

### B.    Discharge

Pursuant to section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in this Plan or in the Confirmation Order, the Distributions and rights that are provided in this Plan shall be in complete satisfaction, discharge, and release of all Claims, whether known on unknown, against, liabilities of, Liens on, obligations of, rights against, Debtor or his Estate that arose prior to the Effective Date.   Debtor does not have a right to a discharge until all the

plan payments have been made unless otherwise ordered by the Court pursuant to section 1141(d)(5) of the Bankruptcy Code; however, Debtor has not waived his right to seek entry of a discharge order before completion of all plan payments.  In the event Debtor seeks entry of a discharge order after the entry of a final decree, Debtor may reopen the Case for purposes of obtaining a discharge and the fee associated with the attendant motion to reopen case shall be waived.

Upon entry of a Confirmation Order, the provisions of the Plan bind: (a) Debtor, (b) any entity acquiring property under the Plan, (c) any creditor, (d) any party to an executory contract with Debtor, whether or not the claim or interest of such creditor or equity holder is impaired under the Plan, and whether or not such creditor or equity holder has accepted the Plan.

**C.    Injunction**.  Regardless of whether the Court has entered a final decree in the Bankruptcy Case, all creditors of Debtor, claimants against Debtor, and all persons having or claiming interest of any nature in Debtor's property and assets are enjoined and stayed: from pursuing or attempting to pursue any action, commencing or continuing any action, employing any process or any act against Debtor or his property, on account of or based upon any right, claim, or interest which any such creditor, claimant, or other person may have had at the date of the filing of Debtor's Chapter 11 petition, except with respect to claims, rights, or interest arising out of the Plan.  In other words and not in limitation of the foregoing, creditors of the Debtor are enjoined from collecting pre-petition debts owed by Debtor except to the extent allowed by the Plan.

**D.    Setoffs**

Debtor may, but shall not be required to, set off against any Claim, and the payments or other Distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that Debtor may have now or in the future against such Holder; but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by Debtor of any such claim that Debtor may have against such Holder.

**E.    Exculpation and Limitation of Liability**

Under the Plan, Debtor's post-Filing Date and pre-Effective Date attorneys, representatives, financial advisors, investment bankers, or agents and any of such parties' successors and assigns (collectively the "Exculpated Parties"), shall not have or incur, and shall be released from, any claim, obligation, cause of action, or liability to one another or to any Holder of any Claim or Interest, or any other party-in-interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or Affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of: (1) the Bankruptcy Case, (2) the negotiation and filing of the Plan, (3) the filing of the Bankruptcy Case, (4) the pursuit of confirmation of the Plan, (5) the consummation of the Plan, or (6) the administration of the Plan or the property to be distributed under the Plan (1 through 6 being hereinafter referred to as a "Bankruptcy Event"), except for their willful misconduct or gross negligence, and in all respects shall be entitled to reasonably rely upon the advice of counsel

with respect to their duties and responsibilities under the Plan. Except as provided by this paragraph, no Holder of any Claim or Interest, or other party in interest, none of their respective agents, employees, representatives, financial advisors, or Affiliates, and successors or assigns of the foregoing, shall have any right of action against the Exculpated Parties listed in this provision for any act or omission in connection with, relating to, or arising out of a Bankruptcy Event.

### F.    Miscellaneous Plan Provisions

#### 1.    Modification of Plan

Debtor shall be allowed to modify the Plan pursuant to section 1127 of the Bankruptcy Code to the extent applicable law permits. Subject to the limitations contained in the Plan, pursuant to Article 13.1 of the Plan, Debtor may modify the Plan, before or after confirmation, without notice or hearing, or after such notice and hearing as the Bankruptcy Court deems appropriate, if the Bankruptcy Court finds that the Modification does not materially and adversely affect the rights of any parties in interest which have not had notice and an opportunity to be heard with regard thereto. In the event of any modification on or before confirmation, any votes to accept or reject the Plan shall be deemed to be votes to accept or reject the Plan as modified, unless the Bankruptcy Court finds that the modification materially and adversely affects the rights of parties in interest which have cast said votes. Debtor reserves the right in accordance with section 1127 of the Bankruptcy Code to modify the Plan at any time before the Confirmation Date.

#### 2.    Retention of Jurisdiction

The Plan provides that subsequent to the Effective Date, the Bankruptcy Court shall have or retain jurisdiction for the following purposes:

(a)    to adjudicate objections concerning the allowance, priority or classification of Claims and any subordination thereof, and to establish a date or dates by which objections to Claims must be filed to the extent not established in the Plan;

(b)    To liquidate the amount of any disputed, contingent or unliquidated Claim, to estimate the amount of any disputed, contingent or unliquidated claim, to establish the amount of any reserve required to be withheld from any distribution under the Plan on account of any disputed, contingent or unliquidated claim;

(c)    To resolve all matters related to the rejection, assumption and/or assignment of any Executory Contract or Unexpired Lease of Debtor;

(d)    To hear and rule upon all Retained Actions, Avoidance Actions and other Causes of Action commenced and/or pursued by Debtor;

(e)    To hear and rule upon all applications for Professional Compensation;

(f)     To remedy any defect or omission or reconcile any inconsistency in the Plan, as may be necessary to carry out the intent and purpose of the Plan;

(g)     To construe or interpret any provisions in the Plan and to issue such orders as may be necessary for the implementation, execution and consummation of the Plan, to the extent authorized by the Bankruptcy Code;

(h)     To adjudicate controversies arising out of the administration of the Estate or the implementation of the Plan;

(i)     To make such determinations and enter such orders as may be necessary to effectuate all the terms and conditions of the Plan, including the Distribution of funds from the Estate and the payment of claims;

(j)     To determine any suit or proceeding brought by Debtor to recover property under any provisions of the Bankruptcy Code;

(k)     To hear and determine any tax disputes concerning Debtor and to determine and declare any tax effects under the Plan;

(l)     To determine such other matters as may be provided for in the Plan or the Confirmation Order or as may be authorized by or under the provisions of the Bankruptcy Code;

(m)     To determine any controversies, actions or disputes that may arise under the provisions of the Plan, or the rights, duties or obligations of any Person under the provisions of the Plan;

(n)     To adjudicate any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of, or in connection with, any agreement pursuant to which Debtor sold any of its assets during the Bankruptcy Cases; and

(o)     To enter a final decree.

### 3.     Distributions

(a)     <u>Disbursing Agent</u>.  Unless otherwise provided for herein, all Distributions under this Plan shall be made by Debtor or his agent.

(b)     <u>Distributions of Cash</u>.  Any Distribution of Cash made by Debtor pursuant to this Plan shall, at Debtor's option, be made by check drawn on a domestic bank or by wire transfer from a domestic bank or in any other form of cash or cash equivalent.

(c)     <u>No Interest on Claims or Interests</u>.  Unless otherwise specifically provided for in

this Plan, the Confirmation Order, or a postpetition agreement in writing between the Debtor and a Holder, postpetition interest shall not accrue or be paid on Claims, and no Holder shall be entitled to interest accruing on or after the Filing Date on any Claim. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final determination is made when and if such Disputed Claim becomes an Allowed Claim.

(d)     <u>Delivery of Distributions</u>. <u>Delivery of Distributions</u>. The Distribution to a Holder of an Allowed Claim shall be made by Debtor (a) at the address set forth on the proof of claim filed by such Holder, (b) at the address set forth in any written notices of address change delivered to Debtor after the date of any related proof of claim, (c) at the addresses reflected in the Schedules if no proof of claim has been filed and Debtor has not received a written notice of a change of address, or (d) if the Holder's address is not listed in the Schedules, at the last known address of such Holder according to the Debtor's books and records.

If any Distribution on an Unsecured Claim ("Unsecured Distribution") is tendered by Debtor to a Holder of an Unsecured Claim and returned as undeliverable, refused or otherwise returned ("Unsecured Distribution Refusal"), Debtor shall not be responsible for making any further Unsecured Distribution on account of such Unsecured Claim. Accordingly, in the event of an Unsecured Distribution Refusal, Debtor shall be relieved of any obligation to make said payment or Distribution and Debtor is relieved of any obligation to make further payments or Distributions on such Unsecured Claim under the Plan.

If any Distribution on a Secured Claim or Priority Claim ("Secured or Priority Distribution") is tendered by Debtor to a Holder of a Secured Claim or Priority Claim and returned as undeliverable, refused or otherwise returned ("Secured or Priority Distribution Refusal"), the Holder of such Secured Claim or Priority Claim, as applicable, shall be deemed to have waived its right to such tendered payment or Distribution and such tendered payment or Distribution shall be deemed satisfied. In the event of a Secured or Priority Distribution Refusal, any obligation of Debtor to make any additional or further payment on such Secured Claim or Priority Claim shall be tolled until such time as: (i) notice is provided to Debtor that the Holder of such Secured Claim or Priority Claim seeks to receive payments from Debtor on the Secured Claim or Priority Claim or otherwise seeks to enforce Debtor's obligations under the Plan or otherwise enforce the Secured Claim or Priority Claim and (ii) any dispute regarding the Secured or Priority Distribution Refusal and its implications is resolved by agreement of the parties or the Bankruptcy Court (the "Tolling Period"). Only in the event of such notice to Debtor shall Debtor's obligations to perform as to the applicable Secured Claim or Priority Claim resume. The Tolling Period shall: (i) extend the term of the payments on such Secured Claim or Priority Claim and (ii) bar any interest from accruing on the Secured Claim or Priority Claim until such time as any dispute

regarding the Secured or Priority Distribution Refusal shall be resolved by Final Order.  Notwithstanding anything in the Plan, or any loan document, agreement or otherwise to the contrary, no provision allowing the imposition of late fees, default interest, late charges, damages, or costs and fees against the Debtor or the Debtor's property shall be applicable during the Tolling Period or any period during which a dispute regarding a Tolling Period is being resolved.  For purposes of clarification, Debtor shall not be required to make any lump sum cure of payments or Distributions which would have otherwise come due during (i) the Tolling Period or (ii) any period during which a dispute regarding a Tolling Period is unresolved, and Debtor shall recommence Distributions upon the resolution of such dispute on the terms in the Plan as tolled.

(e)     <u>Distributions to Holders as of the Record Date</u>.  All Distributions on Allowed Claims shall be made to the Record Holders of such Claims.  As of the close of business on the Confirmation Date, the Claims register maintained by the Bankruptcy Court shall be closed, and there shall be no further change in the Holder of any Claim.  Debtor shall have no obligation to recognize any transfer of any Claim occurring after the Confirmation Date.  Debtor shall instead be entitled to recognize and deal for all purposes under this Plan with the Record Holders as of the Confirmation Date.

(f)     <u>Fractional Dollars</u>.  Any other provision of this Plan notwithstanding, the Debtor shall not be required to make Distributions or payments of fractions of dollars.  Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, at Debtor's option the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

(g)     <u>Withholding Taxes</u>.  Debtor shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions under this Plan shall be subject to any such withholding and reporting requirements.

## XIV.  Confirmation and Consummation Procedure

### A.     General Information

All creditors whose Claims are Impaired by the Plan may cast their votes for or against the Plan.  As a condition to confirmation of the Plan, the Bankruptcy Code requires that one Class of Impaired Claims votes to accept the Plan.  Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a Class of Impaired Claims as acceptance by holders of at least two-thirds of the dollar amount of the class <u>and</u> by more than one-half in number of Claims.  Holders of Claims who fail to vote are not counted as either accepting or rejecting a plan.  Voting is accomplished by completing, dating, signing and returning the ballot form (the "Ballot") by the Voting Deadline.  Ballots will be distributed to all creditors entitled to vote on

the Plan and is part of the Solicitation Package accompanying the Disclosure Statement. The Ballot indicates (i) where the Ballot is to be filed and (ii) the deadline by which creditors must return their Ballots.

Unless otherwise specifically provided in a class of the Plan, in the event of a default by Debtor in payments under the Plan or otherwise, the Holder of such Claim must send written notice to Debtor and Cameron McCord of the claimed default.

**Events of Default**. As provided in Article 2.3 of the Plan, unless otherwise specifically provided in a class under the Plan, in the event of a default by Debtor in payments under the Plan or otherwise, the Holder must send written notice ("Default Notice") to Debtor at the addresses of record for Debtor as reflected on the docket for this Bankruptcy Case, unless Debtor has provided the Holder with a written notice of a change of address. Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default, as well as notice that Debtor has twenty (20) days (in the case of a monetary default) and thirty (30) days (in the case of a non-monetary default) from receipt by Debtor and Debtor's counsel of the Default Notice (or the following business day if the 20th or 30th day does not fall on a business day) to cure such default (and the address for payment, which will accept overnight deliveries, in the event of a monetary default). The Holder must send such Default Notice to Debtor via certified mail or recognized overnight carrier with a copy via email or fax and certified mail to Cameron M. McCord (Jones & Walden, LLC) at the address reflected in the then current directory of the State of Bar of Georgia. Debtor shall have twenty (20) days or thirty (30) days (as applicable) from Debtor's and Debtor's counsel's receipt of the Default Notice to cure such default. Receipt by Debtor's Attorney shall not be deemed receipt by Debtor of the required Default Notice. Notwithstanding anything to the contrary in the Plan or otherwise, a default under one Class of Claims or sub-class of Claims shall not constitute a default under any other Class of Claims or sub-class of Claims. (For example a default under Class 1 shall not constitute a default under Class 3).

**Notices**. All notices under the Plan shall be in writing. Unless otherwise specifically provided here in, all notices shall be sent to Debtor via U.S. Certified Mail Return Receipt or by recognized overnight carrier to the address of record for Debtor in this Case, unless Debtor has provided such Holder with written notice of change of address for Debtor, with a copy via email or fax and certified mail to Cameron M. McCord at the address reflected in the then current directory of the State Bar of Georgia. Receipt of notice by Cameron M. McCord (Jones & Walden, LLC) shall not be deemed receipt by Debtor of the required notice. Notice to creditors may be provided (a) at the address set forth on the proof of claim filed by such Holder, (b) at the address set forth in any written notices of address change delivered to Debtor after the date of any related proof of claim, (c) at the addresses reflected in the Schedules if no proof of claim has been filed and Debtor has not received a written notice of a change of address, or (d) if the Holder's address is not listed in the Schedules, at the last known address of such Holder according to the Debtor's books and records.

### B.      Solicitation of Acceptances

This Disclosure Statement has been approved by the Court as containing "adequate information" to permit creditors to make an informed decision whether to accept or reject the Plan.  Under the Bankruptcy Code, your acceptance of the Plan may not be solicited unless you receive a copy of this Disclosure Statement prior to, or concurrently with, such solicitation.

### C.      Acceptances Necessary to Confirm the Plan

At the Confirmation Hearing, the Court shall determine, among other things, whether the Plan has been accepted by the Debtor's creditors.  The Voting Classes will be deemed to accept the Plan if at least two-third in amount and more than one-half in number of the Claims in each class vote to accept the Plan.  Furthermore, unless there is unanimous acceptance of the Plan by the Voting Classes, the Court must also determine that any non-accepting Class members will receive property with a value, as of the Effective Date of the Plan, that is not less than the amount that such Class member would receive or retain if the Debtor were liquidated as of the Effective Date of the Plan under Chapter 7 of the Bankruptcy Code.

### D.      Confirmation of Plan Pursuant to Section 1129(b)

The Bankruptcy Code provides that the Plan may be confirmed even if it is not accepted by all Impaired classes.  To confirm the Plan without the requisite number of acceptances of each Impaired Class, the Court must find that at least one Impaired Class has accepted the Plan without regard to the acceptances of insiders, and the Plan does not discriminate unfairly against, and is otherwise fair and equitable, to any Impaired Class that does not accept the Plan.  Accordingly, if any Impaired Class votes to accept the Plan, the Debtor will seek to confirm the Plan under the "cramdown" provisions of section 1129(b) of the Bankruptcy Code.

### E.      Considerations Relevant to Acceptance of the Plan

Debtor's recommendation that all Creditors should vote to accept the Plan is premised upon Debtor's view that the Plan is preferable to other alternatives for liquidation of Debtor's estate.  It appears unlikely to Debtor that an alternate plan of reorganization or liquidation can be proposed that would provide for payments in an amount equal or greater than the amounts proposed under the Plan.  If the Plan is not accepted, it is likely that the interests of all creditors will be further diminished.

## Disclaimer

*All Creditors and Holders of Interests are advised and encouraged to read this Disclosure Statement and the Plan in their entirety.  Plan summaries and statements made in this Disclosure Statement are qualified in their entirety by reference to the Plan, any exhibits, and the Disclosure Statement as a whole.*

*This Disclosure Statement has been prepared in accordance with § 1125 of the*

*Bankruptcy Code and Rule 3016(c) of the Federal Rules of Bankruptcy Procedure and not in accordance with federal or state securities laws. This Disclosure Statement has neither been approved nor disapproved by the Securities and Exchange Commission ("SEC"), nor has the SEC passed on the accuracy or adequacy of the statements contained herein. This Disclosure Statement was prepared to provide holders of Claims and Interests in Debtor with "adequate information" (as defined in the Bankruptcy Code) so that they can make an informed judgment about the Plan.*

*As to contested matters, adversary proceedings, and other actions or threatened actions, this Disclosure Statement shall not constitute nor be construed as an admission of any fact or liability, stipulation, or waiver, but rather as a statement made in settlement negotiations.*

*The information contained in this Disclosure Statement is included herein for the purpose of soliciting acceptances of the Plan and may not be relied upon for any purpose other than to make a judgment with respect to, and how to vote on, the Plan.*

**The representations in this Disclosure Statement are those of Debtor. No representations concerning Debtor is authorized other than as set forth in this statement. Any representation or inducement made to secure acceptance of this Plan which are other than as contained in this document should not be relied upon by any Person. The information contained herein has not been subject to a certified audit. Every effort, however, has been made to provide adequate financial information in this Disclosure Statement. The representations by Debtor is not warranted or represented to be without any inaccuracy, although every effort has been made to be accurate. Neither the Plan nor this Disclosure Statement has been designed to forecast consequences which follow from a general rejection of this Plan, although an attempt is made to state the consequences of a liquidation of Debtor.**

*This Disclosure Statement contains summaries of certain provisions of the Plan, statutory provisions, documents related to the Plan, events in Debtor's Chapter 11 case, and financial information. Although Debtor believes that the Plan and related document summaries are fair and accurate, such summaries are qualified to the extent that they do not set forth the entire text of such documents or statutory provisions. Factual information contained in this Disclosure Statement has been provided by Debtor, except where otherwise specifically noted. Debtor is unable to warrant or represent that the information contained herein, including the financial information, is without any inaccuracy or omission. The financial data set forth herein, except as otherwise specifically noted, has not been subjected to an independent audit.*

*Nothing contained herein shall (1) constitute an admission of any fact or liability by any party, (2) be admissible in any nonbankruptcy proceeding involving Debtor or any other party; provided, however, that in the event Debtor default under the Plan, the Disclosure Statement may be admissible in a proceeding relating to such default for the purpose of establishing the existence of such default, or (3) be deemed conclusive advice on the tax or other legal effects of Debtor's Plan as to holders of Claims or Interests. You should consult your personal counsel or tax advisor on any questions or concerns regarding tax or other legal consequences of the Plan.*

*Except for historical information, all the statements, expectations, and assumptions, including expectations and assumptions contained in this Disclosure Statement, involve a number of risks and uncertainties. Although Debtor has used its best efforts to be accurate in making these statements, it is possible that the assumptions made by Debtor may not materialize. In addition, other important factors could affect the prospect of recovery to Creditors including, but not limited to, the inherent risks of litigation and the amount of Allowed Claims.*

Respectfully submitted this 25th day of April, 2018.

*/s/ William Lee Gentry*
William Gentry
Debtor in Possession


**JONES & WALDEN, LLC**

*/s/ Cameron McCord*
Cameron McCord
Georgia Bar No. 143065
21 Eighth Street, NE
Atlanta, Georgia 30309
(404) 564-9300
Attorney for Debtor

**Exhibit "A"**

**Debtor's Quarterly Budget Year 1**

| INCOME | |
|---|---|
| Peachtree Data, Inc | $150,000.00 |
| | |
| **HOUSEHOLD EXPENSES** | |
| Home Maintenance | $2,100 |
| HOA Fees | $575 |
| Utilities | $2,100 |
| Water | $750 |
| Phone/Internet | $1,500 |
| Household Expenses/Food | $8,100 |
| Medical/Dental | $4,500 |
| Personal Care | $500 |
| Transportation | $900 |
| Auto Insurance | $585 |
| Car Maintenance | $1,125 |
| Car Payment | $1,500 |
| Life Insurance | $900 |
| Health Insurance | $1,863 |
| Umbrella Policy | $150 |
| Center Point Property | $1,875 |
| Estimated Taxes | $50,000 |
| Business Expenses | $5000 |
| **Total Monthly Expenses** | **$91,523** |
| | |
| **PLAN PAYMENTS** | |
| Class 1 - BOA | $48,967.71 |
| Class 2A – Internal Revenue Service | $500.00 |
| Class 3A- Georgia Dept. of Revenue | $500.00 |
| Class 4 – Carroll County | $538.19 |
| Class 6 – Gwinnett County | $1,221.00 |
| **Total Plan Payments** | $51,726 |
| | |
| Total Expenses | $143,249 |

| Excess Income | $6,751.00 |
| --- | --- |

## Debtor's Quarterly Budget Year 2-4

| INCOME | |
| --- | --- |
| Peachtree Data, Inc | $150,000.00 |
| | |
| **HOUSEHOLD EXPENSES** | |
| Home Maintenance | $2,100 |
| HOA Fees | $575 |
| Utilities | $2,100 |
| Water | $750 |
| Phone/Internet | $1,500 |
| Household Expenses/Food | $8,100 |
| Medical/Dental | $4,500 |
| Personal Care | $500 |
| Transportation | $900 |
| Auto Insurance | $585 |
| Car Maintenance | $1,125 |
| Car Payment | $1,500 |
| Life Insurance | $900 |
| Health Insurance | $1,863 |
| Umbrella Policy | $150 |
| Center Point Property | $1,875 |
| Estimated Taxes | $50,000 |
| Business Expenses | $5000 |
| **Total Monthly Expenses** | **$91,523** |
| | |
| **PLAN PAYMENTS** | |
| Class 1 - BOA | $2,529.20[7] |
| Class 2A – Internal Revenue Service | $500.00 |
| Class 2B – Internal Revenue Service | $32,673.00 |
| Class 3A- Georgia Dept. of | $500.00 |

---

[7] Upon information and belief, the Class 1B Claim will be satisfied in full by November 2019.  The Class 1 – BOA payment would decrease to $748.28.

| Revenue | |
|---|---|
| Class 3B – Georgia Dept. of Revenue | $26,409 |
| Class 6 – Gwinnett County | $1,221.00 |
| **Total Plan Payments** | $61,303.00 |
| | |
| Total Expenses | $152,826 |
| **Excess Income** | **($2,250.33)[8]** |

## Debtor's Quarterly Budget Year 5

| INCOME | |
|---|---|
| Peachtree Data, Inc | $150,000.00 |
| | |
| **HOUSEHOLD EXPENSES** | |
| Home Maintenance | $500 |
| HOA Fees | $575 |
| Utilities | $1000 |
| Water | $250 |
| Phone/Internet | $1,500 |
| Household Expenses/Food | $8,100 |
| Medical/Dental | $4,500 |
| Personal Care | $500 |
| Transportation | $900 |
| Auto Insurance | $585 |
| Car Maintenance | $1,125 |
| Car Payment | $1,500 |
| Life Insurance | $900 |
| Health Insurance | $1,863 |
| Umbrella Policy | $150 |
| Center Point Property | $1,875 |
| Estimated Taxes | $50,000 |
| Business Expenses | $15,000 |
| **Total Monthly Expenses** | **$90,823** |
| | |
| **PLAN PAYMENTS** | |

---

[8] Any deficiency will be covered by excess income from year one.

| | |
|---|---|
| Class 7 – General Unsecured | $50,000.00 |
| **Total Plan Payments** | $50,000.00 |
| | |
| Total Expenses | $140,823.00 |
| **Excess Income** | **$9,177.00** |

## CERTIFICATE OF SERVICE

I certify that on the date specified herein below I cause to be served a copy of the foregoing documents via first class United States mail in a properly addressed envelope with sufficient postage affixed thereto to ensure delivery upon the parties listed below:

Office of the United States Trustee
362 Richard B. Russell Federal Building
75 Ted Turner Drive SW
Atlanta, Georgia 30303

This 25th day of April, 2018.

**JONES & WALDEN, LLC**

*/s/ Cameron McCord*
Cameron McCord
Georgia Bar No. 143065
21 Eighth Street, NE
Atlanta, Georgia 30309
(404) 564-9300
Attorney for Debtor