**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **IN RE:** | **CHAPTER 11** |
| **WILLIAM LEE GENTRY,** | **CASE NO. 17-65615-bem** |
| **Debtor.** | |

**PLAN OF REORGANIZATION**

**Dated this 25th day of April, 2018**

Filed by:

William Lee Gentry
Debtor and Debtor in Possession

Attorneys for Debtor and Debtor in Possession:

Leon S. Jones
Cameron M. McCord
Jones & Walden, LLC
21 Eighth Street, NE
Atlanta, Georgia 30309
(404) 564-9300

COMES NOW, William Lee Gentry, debtor and debtor in possession in the above-captioned case (the "Debtor"), and, pursuant to sections 1121 and 1123 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), proposes this Plan of Reorganization (the "Plan") for the resolution of the Claims against the Debtor.  The Debtor is the proponent of this Plan within the meaning of section 1129 of the Bankruptcy Code.

**Article 1**
**Introduction**

1.1     <u>Disclosure Statement</u>.  Contemporaneously with the filing of the Plan, Debtor filed and served a Disclosure Statement, as required by section 1125 of the Bankruptcy Code. The Disclosure Statement contains the Debtor's history, financial information regarding Debtor and its assets, and a solicitation of acceptances of this Plan.

1.2     <u>Property and Claims</u>.  This Plan deals with all property of Debtor and provides for treatment of all Claims against Debtor and its property.

**Article 2**
**Definitions and General Provisions**

For the purposes of this Plan, except as otherwise expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Article 2.1 of this Plan.  Any term that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term therein.

2.1     The following terms, when used in this Plan, shall have the following meaning:

2.1.1   "Administrative Claim" means a Claim for payment of an administrative expense entitled to priority under section 507(a)(2) of the Bankruptcy Code.

2.1.2   "Allowed Claim" shall mean a Claim or any portion thereof that is enforceable against Debtor or enforceable against the property of Debtor under sections 502 *or* 503 of the Bankruptcy Code.

2.1.3   "Allowed Secured Claim" shall mean the amount of the allowed Claim held by parties secured by property of Debtor which is equal to the amount provided by the Plan unless such amount is stipulated as constituting the allowed secured claim between the parties, or such amount as the Bankruptcy Court allows.

2.1.4   "Allowed Unsecured Claim" shall mean Allowed Claims which are not allowed administrative, priority, or secured claims.

2.1.5   "Assets" means, collectively, all of the property, as defined by sections 541 and 1115 of the Bankruptcy Code, of the Estate of the Debtor (including without limitation,

2

all of the assets, property, interests (including equity interests) and effects, real and personal, tangible and intangible, including all Avoidance Actions), wherever situated as such properties exist on the Effective Date or thereafter in accordance with sections 541 and 1115 of the Bankruptcy Code.

2.1.6   "Avoidance Action" means any claim or cause of action of the Estate arising out of or maintainable pursuant to sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code or any other similar applicable law, regardless of whether such action has been commenced prior to the Effective Date.

2.1.7   "Ballot" means each of the ballot forms that are distributed with the Disclosure Statement to Holders of Claims included in the Classes that are Impaired under this Plan and are entitled to vote.

2.1.8   "Bankruptcy Case" means the chapter 11 case initiated by the Debtor's filing on the Filing Date of a voluntary petition for relief in the Bankruptcy Court under Chapter 11 of the Bankruptcy Code.

2.1.9   "Bankruptcy Code" means title 11 of the United States Code.

2.1.10  "Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division.

2.1.11  "Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure.

2.1.12  "Business Day" means any day on which the commercial banks are required to be open for business in Atlanta, Georgia.

2.1.13  "Cash" means legal tender of the United States of America and equivalents thereof.

2.1.14  "Causes of Action" means all Avoidance Actions and any and all of Debtor's actions, suits, accounts, agreements, promises, rights to payment and claims, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured, and whether asserted or assertable directly or derivatively, in law, equity, or otherwise.

2.1.15  "Chapter 11" means chapter 11 of the Bankruptcy Code.

2.1.16  "Claim" means a claim against Debtor whether or not asserted, as defined in section 101(5) of the Bankruptcy Code.

2.1.17  "Class" means a category of Claims described in this Plan.

2.1.18 "Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order.

2.1.19 "Confirmation Hearing" means the hearing before the Bankruptcy Court held to consider confirmation of this Plan and related matters under section 1128 of the Bankruptcy Code, as such hearing may be continued.

2.1.20 "Confirmation Order" means the order confirming this Plan pursuant to section 1129 of the Bankruptcy Code that the Bankruptcy Court enters, which shall be in all respects reasonably acceptable to the Debtor.

2.1.21 "Debtor" shall mean William Lee Gentry, the debtor in this Bankruptcy Case.

2.1.22 "Disallowed Claim" means a Claim or any portion thereof that: (i) has been disallowed by a Final Order, (ii) is listed in any of Debtor's Schedules at zero, unknown, contingent, disputed, or unliquidated and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court, or (iii) is not listed in Debtor's Schedules and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court.

2.1.23 "Disclosure Statement" means the Disclosure Statement for Plan of Reorganization filed by Debtor as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, as such Disclosure Statement may be amended, modified or supplemented from time to time.

2.1.24 "Disputed Claim" means, with reference to any Claim, a Claim or any portion thereof, that is the subject of an objection timely filed in the Bankruptcy Court and which objection has not been withdrawn, settled or overruled by a Final Order of the Bankruptcy Court.

2.1.25 "Distribution" means any distribution by Debtor or reorganized Debtor to a Holder of an Allowed Claim.

2.1.26 "District Court" means the United States District Court for the Northern District of Georgia, Atlanta Division.

2.1.27 "Effective Date" means the date that is 60 days after entry of a Confirmation Order.

2.1.28 "Equipment" means the machinery, fixtures, equipment, and other supplies used by Debtor in the operation of business.

2.1.29 "Estate" means, with regard to Debtor, the estate that was created by the commencement by Debtor of the Bankruptcy Case pursuant to sections 541 and 1115 of the Bankruptcy Code, and shall be deemed to include, without limitation, any and all rights, powers,

and privileges of such Debtor and any and all interests in property, whether real, personal or mixed, rights, Causes of Action, Retained Actions, avoidance powers or extensions of time that such Debtor or such estate shall have had as of the commencement of the Bankruptcy Case, or which such Estate acquired after the commencement of the Bankruptcy Case, whether by virtue of sections 541, 544, 545, 546, 547, 548, 549 or 550 of the Bankruptcy Code, or otherwise as provided by sections 541 and 1115 of the Bankruptcy Code.

2.1.30  "Executory Contract or Unexpired Lease" means all executory contracts and unexpired leases to which Debtor is a party.

2.1.31  "Filing Date" means September 5, 2017.

2.1.32  "Final Distribution" means the Distribution by Debtor or reorganized Debtor that satisfies all Allowed Claims to the extent provided in accordance with the Plan.

2.1.33  "Final Distribution Date" means the Distribution Date on which the Final Distribution is made.

2.1.34  "Final Order" means an order of the Bankruptcy Court, the District Court, or any other court as to which (i) any appeal that has been taken has been finally determined or dismissed, or (ii) the time for appeal has expired and no appeal has been filed timely.  In the case of an order of the Bankruptcy Court, the time for appeal, for purposes of this definition, shall be the time permitted for an appeal to the District Court.

2.1.35  "Holder" means a holder of a Claim or Interest, as applicable.

2.1.36  "Impaired" shall have the meaning ascribed thereto in section 1124 of the Bankruptcy Code.

2.1.37  "Interests" intentionally deleted.

2.1.38  "Lien" has the meaning set forth in section 101(37) of the Bankruptcy Code.

2.1.39  "Person" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit (as defined in section 101(27) of the Bankruptcy Code) or other entity.

2.1.40  "Plan" means this plan of reorganization as the same may hereafter be corrected, amended, supplemented, restated, or modified.

2.1.41  "Priority Claim" means a Claim entitled to priority under the provisions of section 507(a) of the Bankruptcy Code other than an Administrative Expense Claim or a Priority Tax Claim.

2.1.42  "Priority Tax Claim" means a Claim against the Debtor that is of a kind specified in sections 507(a)(8) of the Bankruptcy Code.

2.1.43  "Professional Compensation" means any amounts that the Bankruptcy Court allows pursuant to section 330 of the Bankruptcy Code as compensation earned, and reimbursement of expenses incurred, by professionals.

2.1.44  "Record Date" means the date established in the Confirmation Order or any other Final Order of the Bankruptcy Court for determining the identity of Holders of Allowed Claims entitled to Distributions under this Plan.  If no Record Date is established in the Confirmation Order or any other order of the Bankruptcy Court prior thereto, then the Record Date shall be the Confirmation Date.

2.1.45  "Record Holder" means the Holder of a Claim as of the Record Date.

2.1.46  Intentionally Deleted.

2.1.47  "Retained Action" means all claims, Causes of Action, rights of action, suits and proceedings, whether in law or in equity, whether known or unknown, which Debtor or Debtor's Estate may hold against any Person, including, without limitation, (i) claims and Causes of Action brought prior to the Effective Date, (ii) claims and Causes of Action against any Persons for failure to pay for products or services provided or rendered by Debtor, (iii) claims and Causes of Action relating to strict enforcement of the Debtor's intellectual property rights, including patents, copyrights and trademarks, (iv) claims and Causes of Action seeking the recovery of the Debtor's accounts receivable or other receivables or rights to payment created or arising in the ordinary course of the Debtor's business, including without limitation, claim overpayments and tax refunds, and (v) all Causes of Action that are Avoidance Actions.

2.1.48  "Schedules" means the Schedules of Assets and Liabilities Debtor filed in the Bankruptcy Case, as such Schedules may be amended from time to time in accordance with Bankruptcy Rule 1009.

2.1.49  "Secured Claim" means a Claim against Debtor to the extent secured by a Lien on any property of Debtor on the Petition Date to the extent of the value of said property as provided in section 506(a) of the Bankruptcy Code.

2.1.50  "Subordinated Claim" means any Unsecured Claim that is subordinated in priority to all other Allowed Unsecured Claims pursuant to the provisions of section 510 of the Bankruptcy Code or other applicable law.

2.1.51  "Unimpaired" means, with respect to a Class of Claims or Interests, any Class that is not Impaired.

2.1.52  "Unsecured Claim" means any Claim against Debtor that is not a Secured Claim, a Priority Claim, a Priority Tax Claim, or an Administrative Expense Claim.

2.2    Time.  Whenever the time for the occurrence or happening of an event as set forth in this Plan, including payments, falls on a day which is a Saturday, Sunday, or legal holiday under the laws of the United States of America or the State of Georgia, then the time for the next occurrence or happening of said event shall be extended to the next day following which is not a Saturday, Sunday, or legal holiday.

2.3    Events of Default.    Unless otherwise specifically provided in a class under the Plan, in the event of a default by Debtor in payments under the Plan or otherwise, the Holder must send written notice ("Default Notice") to Debtor at the addresses of record for Debtor as reflected on the docket for this Bankruptcy Case, unless Debtor has provided the Holder with a written notice of a change of address.  Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default, as well as notice that Debtor has twenty (20) days (in the case of a monetary default) and thirty (30) days (in the case of a non-monetary default) from receipt by Debtor and Debtor's counsel of the Default Notice (or the following business day if the 20th or 30th day does not fall on a business day) to cure such default (and the address for payment, which will accept overnight deliveries, in the event of a monetary default).  The Holder must send such Default Notice to Debtor via certified mail or recognized overnight carrier with a copy via email or fax and certified mail to Cameron M. McCord (Jones & Walden, LLC) at the address reflected in the then current directory of the State of Bar of Georgia.  Debtor shall have twenty (20) days or thirty (30) days (as applicable) from Debtor's and Debtor's counsel's receipt of the Default Notice to cure such default.  Receipt by Debtor's Attorney shall not be deemed receipt by Debtor of the required Default Notice. Notwithstanding anything to the contrary in the Plan or otherwise, a default under one Class of Claims or sub-class of Claims shall not constitute a default under any other Class of Claims or sub-class of Claims. (For example a default under Class 1 shall not constitute a default under Class 3).

2.4    Notices.   All notices under the Plan shall be in writing.  Unless otherwise specifically provided here in, all notices shall be sent to Debtor via U.S. Certified Mail Return Receipt or by recognized overnight carrier to the address of record for Debtor in this Case, unless Debtor has provided such Holder with written notice of change of address for Debtor, with a copy via email or fax and certified mail to Cameron M. McCord at the address reflected in the then current directory of the State Bar of Georgia.  Receipt of notice by Cameron M. McCord (Jones & Walden, LLC) shall not be deemed receipt by Debtor of the required notice. Notice to creditors may be provided (a) at the address set forth on the proof of claim filed by such Holder, (b) at the address set forth in any written notices of address change delivered to Debtor after the date of any related proof of claim, (c) at the addresses reflected in the Schedules if no proof of claim has been filed and Debtor has not received a written notice of a change of address, or (d) if the Holder's address is not listed in the Schedules, at the last known address of such Holder according to the Debtor's books and records.

**Article 3**
**Classification of Claims and Interests; Impairment**

3.1    Summary.  The categories of Claims set forth below classify all Claims against the Debtor for all purposes of this Plan.  A Claim shall be deemed classified in a particular Class

only to the extent the Claim qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim qualifies within the description of such different Class.  The treatment with respect to each Class of Claims provided for in Article 4 shall be in full and complete satisfaction, release and discharge of such Claims.

    3.2.1   Class 1 shall consist of the Secured Claims of Bank of America.

    3.2.2   Class 2 shall consist of the Secured or Priority Tax Claim of the Internal Revenue Service.

    3.2.3   Class 3 shall consist of the Priority and Secured Tax Claim of the Georgia Department of Revenue.

    3.2.4   Class 4 shall consist of the Priority and Secured Tax Claims of Carroll County, Georgia.

    3.2.5   Class 5 shall consist of the Priority and Secured Tax Claims of Governmental Units.

    3.2.6   Class 6 shall consist of the Priority and Secured Tax Claims of Gwinnett County, Georgia.

    3.2.7   Class 7 shall consist of the General Unsecured Claims.

    3.2.8   Class 8 shall consist of Debtor's Interest and New Value.

### Article 4
### <u>Treatment of Claims and Interests</u>

A complete description of the treatment of each Class is set forth below.

Nothing herein shall constitute an admission as to the nature, validity, or amount of claim. Debtor reserves the right to object to any and all claims.

Debtor reserves the right to pay any claim in full at any time in accordance with the terms of the Plan (i.e. at the percentage distribution designated in the Plan with any accrued and unpaid interest, if any is due under the terms of the Plan) without prepayment penalty.

**4.1    Class 1:    Secured Claims of Bank of America**

Class 1 consists of the Secured Claim of Bank of America, N.A. ("BOA") in the approximate amount of $446,748.72 ("BOA Secured Claim"). The BOA Secured Claim is comprised of the following: (a) Class 1A in the amount of $193,242.43, (b) Class 1B in the amount of $40,423.74, (c) Class 1C in the amount of 4,942.22, and (d) Class 1D in the amount of 208,140.33. The treatment of the same is set forth below.

8

### 4.1.1   Class 1A:

Pursuant to proof of claim no. 3, the Class 1A claim of BOA arises from and in connection with that certain promissory note executed on August 6, 2004 by Debtor in favor of BOA in the original principal amount of $1,098,426.00 with a maturity of August 20, 2019, and interest accruing at the rate of 5.68% per annum. As of the Petition Date, the asserted Class 1A claim was $193,242.43 (such amount, less payment received post-filing, plus interest accruing at the rate of 5.68% annually under the terms herein is referred to as the "Class 1A Claim"). The Class 1A Claim is secured by a first priority lien on Debtor's real property located at 1800 Sugarloaf Club Drive, Duluth, GA 30097 (the "Sugarloaf Property") pursuant to the Security Deed dated August 6, 2004, and recorded on August 19, 2004, in the real property records of Gwinnet County, Georgia in Deed Book 39538 on Page 219 *et. seq.*

### 4.1.2   Class 1B:

Pursuant to proof of claim no. 7, the Class 1B claim of BOA arises from and in connection with that certain promissory note executed on September 14, 2004 by Debtor in favor of BOA in the original principal amount of $202,844.50 with a maturity of October 2, 2019, and interest accruing at the rate of 6.15% per annum. As of the Petition Date, the asserted Class 1B claim was $40,423.74 (such amount, less payment received post-filing, plus interest accruing at the rate of 6.15% annually under the terms herein is referred to as the "Class 1B Claim"). The Class 1B Claim is secured by a second priority lien on the Sugarloaf Property pursuant to the Security Deed dated September 14, 2004, and recorded on September 27, 2004, in the real property records of Gwinnet County, Georgia in Deed Book 39974 on Page 233 *et. seq.*

### 4.1.3   Class 1C:

Pursuant to proof of claim number 6, the Class 1C claim of BOA arises from and in connection with that certain promissory note executed on January 15, 2003 by Debtor and in favor of BOA as lender in the original principal amount of $407,493.00 with a maturity of February 7, 2018[1], and interest accruing at the rate of 5.580% per annum. As of the Petition Date, the asserted Class 1C claim was $4,942.22 (such amount, less payment received post-filing, plus interest accruing at the rate of 5.580% annually under the terms herein is referred to as the "Class 1C Claim"). The Class 1C Claim is secured by a first priority lien on the Debtor's real property located at 1589 Center Point Rd, Carrollton, GA 30117 (the "Center Point Property") pursuant to the Security Deed dated January 15, 2003, and recorded on February 6, 2003, in the real property records of Carroll County, Georgia in Deed Book 2124 on Page 234 *et. seq.*

### 4.1.4   Class 1D

Pursuant to proof of claim number 4, the Class 1D Claim of BOA arises from and in connection with that certain promissory note executed on April 15, 2003 by Debtor and in favor

---

[1] Upon information and belief, the Class 1C Claim will be satisfied prior to the Confirmation Date.

of BOA in the original principal amount of $220,000.00 with a maturity of April 14, 2028, and interest accruing at the rate of 4.250% per annum.   As of the Petition Date, the asserted Class 1D claim was  $208,140.33 (such amount, less payment received post-filing, plus interest accruing at the rate of 4.250% annually under the terms herein is referred to as the "Class 1D Claim") The Class 1D Claim is secured by a second priority lien on the Center Point Property pursuant to the Security Deed dated April 14, 2003, and recorded on May 6, 2003, in the real property records of Carroll County, Georgia in Deed Book 2240 on Page 7 *et. seq.*

Debtor shall market and sell the Sugarloaf Property and pay the then outstanding balance of the Class 1A and Class 1B Claims at the closing in full satisfaction of BOA's liens on the Sugarloaf Property within 36 months of the Effective Date (the "Sugarloaf Maturity Date"). Upon request by Debtor, BOA shall provide a payoff letter within 5 business days of request by Debtor confirming the amount due under the terms of this Class 1A and Class 1B of the Plan and allowing for the release of the liens on the Sugarloaf Property upon receipt of payments in full by BOA of the Class 1A and Class 1B Claims on the terms set forth herein. All remaining net proceeds from the sale of the Sugarloaf Property shall be used to make additional payments under Class 2 (IRS) and Class 3 (GDR) of the Plan ("Sugarloaf Proceeds").

Except as to payment of the Class 1A and Class 1B claims at closing and any other specific terms of the Plan, all pre-petition terms of BOA's pre-petition loan documents shall remain in full force and effect, provided however that the filing of this Bankruptcy shall not be a default thereunder and Debtor shall satisfy the Class 1A Claim and Class 1B Claim (collectively the "BOA Sugarloaf Claims") as provided by Class 1 of the Plan.  BOA shall only by entitled to recover and Debtor shall only pay interest, late fees, attorney fees, and other default charges as expressly allowed by the Bankruptcy Court.  The Class 1A and Class 1B liens of BOA on the Sugarloaf Property shall continue and attach on the Effective Date of the Plan to the same validity and priority as the pre-petition claims, and to the extent of the Class 1A and 1B Claims (as may have been reduced by post-petition payments, if any).

A failure by the Debtor to sell the Sugarloaf Property and pay the Class 1A and Class 1B claims by the Sugarloaf Maturity Date pursuant to the terms of the Plan shall be an event of default as to BOA under Class 1A and 1B.  In the event of a default, BOA may send a Default Notice to Debtor in accordance with Article 2.3 of the Plan. Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default and the address for payment, which will accept overnight deliveries. Receipt by Debtor's Attorney shall not be deemed receipt by Debtor of the required Default Notice.  In the event of an uncured default following proper Default Notice procedures and opportunity to cure pursuant to Article 2.3 of the Plan, BOA may exercise any and all rights and remedies it may have under applicable non-bankruptcy law regarding the Sugarloaf Property and assert a general unsecured Class 7 Claim for any valid and enforceable deficiency remaining after disposition of the Sugarloaf Property in accordance with applicable state law.

Debtor shall market and sell the Center Point Property and pay the then outstanding balance of the Class 1C and 1D claims at the closing in full satisfaction of BOA's liens on the Center Point Property within 36 months of the Effective Date (the "Center Point Maturity Date").  Upon request by Debtor, BOA shall provide a payoff letter within 5 business days of

request by Debtor confirming the amount due under the terms of this Class 1C and 1D of the Plan and allowing for the release of the liens on the Center Point Property upon receipt of payments in full by BOA on the Class 1C and 1D Claims on the terms set forth herein.

Except as to payment of the Class 1C and Class 1D claims at closing and any other specific terms of the Plan, all pre-petition terms of BOA's pre-petition loan documents shall remain in full force and effect, provided however that the filing of this Bankruptcy shall not be a default thereunder and Debtor shall satisfy the Class 1C Claim and the Class 1D Priority Claim (collectively the "BOA Center Point Claims") as provided by Class 1 of the Plan.  BOA shall only be entitled to recover and Debtor shall only pay interest, late fees, attorney fees and other default charges as expressly allowed by the Bankruptcy Court.  The first and second priority liens of BOA in the Center Point Property shall continue and attach on the Effective Date of the Plan to the same validity and priority as the pre-petition claims, and to the extent of the BOA Center Point Claims (as may have been reduced by post-petition payments, if any).

A failure by the Debtor to sell the Center Point Property by the Center Point Maturity Date pursuant to the terms of the Plan shall be an event of default as to BOA.  In the event of a default under Class 1C or 1D, BOA may send a Default Notice to Debtor in accordance with Article 2.3 of the Plan. Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default and the address for payment, which will accept overnight deliveries.  Receipt by Debtor's Attorney shall not be deemed receipt by Debtor of the required Default Notice.  In the event of an uncured default following proper Default Notice procedures and opportunity to cure pursuant to Article 2.3 of the Plan, BOA may exercise any and all rights and remedies it may have under applicable non-bankruptcy law regarding the Center Point Property and assert a general unsecured Class 7 Claim for any valid and enforceable deficiency remaining after disposition of the Center Point Property in accordance with applicable state law.

Nothing herein shall constitute an admission as to the nature, validity, or amount of claim.  Debtor reserves the right to object to any and all claims.

The Holder of an Allowed Class 1 BOA Secured Claim is impaired and entitled to vote to accept or reject the Plan.  Nothing contained herein shall prohibit the Debtor from objecting to the Class 1 Claims for any reason.

4.2    **Class 2: Secured or Priority Tax Claim of the Internal Revenue Service**

The Internal Revenue Service ("IRS") filed amended proof of claim number 1 on October 27, 2017 in the amount of $3,415,660.82 consisting of (i) an asserted secured claim in the amount of $3,004,445.17 (the "Asserted IRS Secured Claim"), (ii) an asserted priority unsecured claim in the amount of $368,890.55 (the "Asserted IRS Priority Tax Claim") and (ii) an asserted general unsecured claim in the amount of $42,325.10 (the "Asserted IRS General Unsecured Claim").

The Court established November 17, 2017 as the Bar Date for filing proofs of claim.  Any claim asserted or assertable by the IRS on or before the Filing Date or treated as arising

prior to the Filing Date pursuant to 11 U.S.C. §502(i) but not asserted by the IRS by the Bar Date shall: (i) be time barred and fixed as provided in the Plan and (ii) any other, additional or amended claim assessable on or prior to the Filing Date shall be disallowed in its entirety and forever discharged.  Debtor shall pay any claim of the IRS assessable, arising prior to the Filing Date or treated as arising prior to the Filing Date pursuant to 11 U.S.C. §502(i) on the terms herein, and the IRS shall be permanently enjoined from seeking payment in excess of the amounts provided for in the Plan for such claims.

### 4.2.1   Class 2A IRS Secured Claim

The Asserted IRS Secured Claim is based on the following asserted IRS Tax Liens attached to the IRS proof of claim:

| Tax Agency | IRS Tax Lien | Tax Period | Lien Recorded | County Recorded | Book and Page | Asserted Amount | Serial # |
|---|---|---|---|---|---|---|---|
| IRS | Collectively referred to herein as "IRS Lien 1" | 2005 | 1/18/2012 | Gwinnett; Carroll | Book: 3513 Page: 72; Book: 135 Page: 859 | $225,535/02 | 840859112; 840859012 |
| IRS | Collectively referred to herein as "IRS Lien 2" | 2006 | 3/23/2012 | Gwinnett, Carroll | Book: 3601 Page: 17; Book: 135 Page: 371 | $151,887.22 | 855456112; 855456012 |
| IRS | Collectively referred to herein as "IRS Lien 3" | 2007 | 4/20/2012 | Gwinnett, Carroll | Book: 3621 Page: 82; Book: 136 Page:235 | $653,693.75 | 860690312; 860690212 |

| Tax Agency | IRS Tax Lien | Tax Period | Lien Recorded | County Recorded | Book and Page | Asserted Amount | Serial # |
|---|---|---|---|---|---|---|---|
| IRS | Collectively referred to herein as "IRS Lien 4" | 2008, 2009, 2010 | 7/16/2012 | Gwinnett | Book: 3675 Page: 242 | $1,289,381.41 | 879990212 |
| | | | 7/23/2012 | Carroll | Book: 138 Page: 427 | | 879990112 |
| IRS | Collectively referred to herein as "IRS Lien 6" | 2011 | 11/5/2012 | Gwinnett | Book: 3756 Page: 191 | $50,180.09 | 902746112 |
| | | | 11/6/2012 | Carroll | Book: 141 Page: 160 | | 902746012 |
| IRS | Collectively referred to herein as "IRS Lien 7" | 2012 | 8/21/2103 | Gwinnett | Book: 400 Page: 85 | $123,181.62 | 955282113 |
| | | | 8/26/2013 | Carroll | Book: 154 Page: 403 | | 955483513 |
| IRS | Collectively referred to herein as "IRS Lien 8" | 2002, 2013 | 12/15/2014 | Gwinnett | Book: 4303 Page: 183 | $200,163.55 | 133104614 |

The IRS Tax Liens are secured by certain of Debtor's pre-petition assets as detailed in the below chart and defined as the "IRS Collateral". The IRS Collateral has a total value of $1,818,859.00. The IRS Collateral is subject to senior liens held by Bank of America and the Georgia Department of Revenue totaling $699,195.67 (as further detailed in Classes 1 and 3) consisting of:

(i)     Bank of America, Class 1A, $193,242.43 securing Debtor's Sugarloaf Property;
(ii)    Bank of America, Class 1B, $40,423.74 securing Debtor's Sugarloaf Property;
(iii)   Bank of America, Class 1C, $4,942.22 securing Debtor's Center Point Property;
(iv)    Bank of America, Class 1D, $208,140.33, securing Debtor's Center Point Property; and
(v)     Georgia Department of Revenue Class 3A, GDR Lien 1, Rev. 11044466 securing Debtor's Sugar Loaf Property and Debtor's personal property (but excluding Debtor's Center Point Property and Debtor's Pleasant Hill Property).

Accordingly, the IRS Lien 1, IRS Lien 2, IRS Lien 3 and IRS Lien 4 (up to a maximum of $89,047.34) shall continue and attach to the IRS Collateral to the same priority and validity as existed on the Filing Date provided that the IRS Lien 1, IRS Lien 2, IRS Lien 3 and IRS Lien 4 (up to a maximum of $89,047.34) shall attach to each specific piece of IRS Collateral only to the extent of the value set forth in "Extent of IRS Lien" column in the below chart. Accordingly, the IRS Lien 1, IRS Lien 2, IRS Lien 3 and IRS Lien 4 (up to a maximum of $89,047.34) shall each continue to the following total extent:

(i)     $225,535.02 as to the IRS Lien 1:
(ii)    $151,887.22 as to the IRS Lien 2;
(iii)   $653,693.75 as to the IRS Lien 3; and
(iv)    $89,047.34 as to the IRS Lien 4,

but the Class 2A IRS Secured Claim shall only attach to a specific piece of IRS Collateral to the Extent of IRS Lien for a total Class 2A IRS Secured Tax Claim of $1,120,163.33 (the "Class 2A IRS Secured Claim").

**"IRS Collateral" for Class 2A**

| IRS Collateral | Scheduled Value | Security Deed Claims | Value for Tax Liens | GDR 1st Priority Tax Lien i.e. GDR Lien 1 (Rev 11044466) | Extent of IRS Lien |
|---|---|---|---|---|---|
| Center Point Property, Carroll County, GA | $500,000 | $213,082.55 | $286,917.45 | $0 | $286,917.45 |
| 4.07 Acres – Pleasant Hill Road, Carroll County, GA | $19,509 | $0 | $19,509.00 | $0 | $19,509 |
| Sugarloaf Property, Gwinnett County, GA | $1,200,000 | $233,665.94 | $966,334.06 | | $713,886.65 |
| 1993 Prevost | $20,000 | $0 | $20,000.00 | | $20,000 |
| Household Furnishings | $25,000 | $0 | $25,000.00 | | $25,000 |
| Electronics | $1,500 | $0 | $1,500.00 | | $1,500 |
| Memorabilia | $5,000 | $0 | $5,000.00 | | $5,000 |
| Guitars | $6,000 | $0 | $6,000.00 | | $6,000 |
| Sports Equipment | $750 | $0 | $750.00 | | $750 |
| Firearms | $250 | $0 | $250.00 | | $250 |
| Clothing and Shoes | $1,500 | $0 | $1,500.00 | | $1,500 |
| Wedding Ring | $100 | $0 | $100.00 | $252,447.18 | $100 |
| Cash | $37,500 | $0 | $37,500.00 | | $37,500 |
| Peachtree Data, Inc. (50% Interest) | 500 | $0 | $500 | | $500 |
| Savings Account | $1,000 | $0 | $1,000.00 | | $1,000 |
| Checking Account | $750 | $0 | $750.00 | | $750 |
| Guardian Life Insurance | $0 | $0 | $0.00 | | $0 |
| Claim Against Willene S. Morris | 0 | $0 | 0 | | $0 |
| Claim against Joes on Juniper, Hudson Grill Midtown, and Einstein's | 0 | $0 | 0 | | $0 |
| | $1,819,359 | $446,748.49 | $1,372,610.51 | $252,447 | $1,120,163 |

The balance of the IRS Lien 4 in the amount of $1,552,868.64 (i.e. $1,641,915.98 less $89,047.34) and the entirety of the IRS Lien 5, IRS Lien 6, IRS Lien 7, and IRS Lien 8 shall be cancelled, discharged and of no further force or effect as of the Confirmation Date and shall attach to the IRS Collateral to the extent of $0.00 (provided the IRS Lien 4 shall attach to the IRS Collateral to the extent of $89,047.34) and the balance of the IRS asserted secured claim in the amount $1,884,281.84 shall be specifically reclassified and treated as a Class 7 General Unsecured Claim.

Debtor is authorized to sell his assets including the IRS Collateral free and clear of liens and pay the proceeds of such sale in the order of priority of liens as detailed in the Sale Procedures in Article 4.9 of the Plan. The Sale Procedures are adopted in Class 2A and apply to Class 2A as if restated verbatim herein.  Specifically, Debtor is authorized to sell the assets, including the IRS Collateral, free and clear of any asserted IRS Lien, including the Class 2A Secured Claim, and pay any proceeds from the sale of such assets after payment of customary closing costs: (i) first to cover any *ad valorem* or personal property taxes associated with the particular property, (ii) then allowed secured claims in order of priority, to the extent of available proceeds, and (iii) then to fund Debtor's other obligations as set forth in the Plan.  The IRS Secured Tax Claim shall only attach to the aforementioned assets to the extent of the value set forth in "Extent of IRS Lien" column.  Accordingly, in the event Debtor liquidates, sells or refinances any of the IRS Collateral, the IRS shall release its lien for a payment equivalent to the *lesser* of: (i) the Extent of IRS Lien for the particular asset (ii) the outstanding balance due Class 2A IRS Secured Claim and (iii) the Release Price (defined in the Sale Procedures).

Debtor shall pay the allowed Class 2A IRS Secured Claim from (i) the sale of assets detailed herein, (ii) in equal quarterly payments of $500 each commencing on the 1st day of the first quarter following the Effective Date and continuing on or by the 1st day of each subsequent quarter (or the next Business Day if the 1st day is not a business day) for a period of 4 years, and (iii) through additional principal reduction payments as Debtor may be able to make from any earnings of Debtor or loan proceeds obtained by Debtor.  Interest shall accrue on the principal tax due amount of the Allowed Class 2A IRS Secured Claim from the Effective Date at the annual rate of 4% or such lesser rate as (i) agreed to by the IRS or (ii) indicated on the applicable IRS proof of claim.  Notwithstanding anything to the contrary herein, Debtor shall pay the balance of the Allowed Class 2A IRS Secured Claim with a balloon payment on the 5-year anniversary of the Filing Date (i.e. September 4, 2022) unless the IRS agrees to a longer payment term, which such agreement may be communicated by continued acceptance of monthly payments after September 4, 2022.  Any third-party payments or payments in excess of the scheduled distribution pursuant to Class 2A received by the IRS shall be applied to the principal tax obligation owed by Debtor pursuant to Class 2A.  Debtor's Class 2A payments shall be applied (i) first to interest accruing under the Plan and (ii) second to the principal balance.

### 4.2.2   Class 2B IRS Priority Claim

The Class 2B IRS Priority Claim is asserted in the amount of $368,890.55 (the "Allowed Class 2B IRS Priority Claim"). Debtor shall pay the allowed Class 2B IRS Priority Claim in equal quarterly payments of $32,673.00 each commencing on the 1st day of the first anniversary of the Effective Date and continuing on or by the 1st day of each subsequent quarter (or the next

Business Day if the 1st day is not a business day) for a period of 3 years. Interest shall accrue on the principal amount due from the Effective Date at the annual rate of 4% or such lesser rate as (i) agreed to by the IRS or (ii) indicated on the applicable IRS proof of claim. Notwithstanding anything to the contrary herein, Debtor shall pay the balance of the Allowed Class 2B IRS Priority Claim with a balloon payment on the 5-year anniversary of the Filing Date (i.e. September 5, 2022) unless the IRS agrees to a longer payment term. Any third-party payments or payments in excess of the scheduled distribution pursuant to Class 2B received by the IRS shall be applied to the principal tax obligation owed by Debtor pursuant to Class 2B. Debtor's Class 2B payments shall be applied (i) first to interest accruing under the Plan and (ii) second to the principal balance.

### 4.2.3    Class 2C IRS General Unsecured Claim

The IRS proof of claim included a general unsecured in the amount of $42,325.10, and pursuant to reclassification of certain asserted secured claims in Class 2A, the IRS additionally holds general unsecured claims in the amount of $1,884,281.84. Accordingly, the IRS General Unsecured Claim in the amount of $1,926,606.94 is specifically classified as a Class 7 general unsecured claim and shall be treated and paid as a Class 7 general unsecured claim.

A failure by the Debtor to make a payment under Class 2 to the IRS pursuant to the terms of the Plan shall be an event of default as to the IRS. In the event of a default under Class 2, the IRS must send a Default Notice to Debtor in accordance with Article 2.3 of the Plan. Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default and the address for payment, which will accept overnight deliveries. Receipt by Debtor's Attorney shall not be deemed receipt by Debtor of the required Default Notice. In the event of an uncured default under Class 2 following proper Default Notice procedures and opportunity to cure pursuant to Article 2.3 of the Plan, the IRS may exercise any and all rights and remedies it may have under applicable non-bankruptcy law regarding the Allowed Class 2 IRS Secured and Priority Tax Claims and seek such relief as may be appropriate in the Bankruptcy Court.

The amount of any claim of the IRS that is not otherwise assessable or due and payable on or prior to the Effective Date, and the right of the IRS, if any, to payment in respect thereto shall (i) be determined in the manner in which the amount of such Claim and the rights of the IRS would have been resolved or adjudicated if the Bankruptcy Case had not been commenced, (ii) survive after the Effective Date as if the Bankruptcy Case had not been commenced, and (iii) not be discharged pursuant to section 1141 of the Bankruptcy Code. However, the rights and treatment of the IRS and obligations and liability of Debtor or its property regarding any claim of the IRS against Debtor which was assessable or due and payable prior to the Effective Date shall be treated and fixed in accordance with the Plan, and any additional or other claims assessable or due and payable prior to the Effective Date and not timely asserted by the IRS in accordance with the Bankruptcy Code and the Plan and in all instances prior to entry of the Confirmation Order, shall be forever barred. Debtor reserves the right to pay any tax claim in full at any time.

The Claim of the Class 2 Creditor is Impaired by the Plan and the holder of the Class 2

Claim is entitled to vote to accept or reject the Plan. Nothing herein shall constitute an admission as to the nature, validity, or amount of such claim. Debtor reserves the right to object to any and all claims.

### 4.3    Class 3:    Secured or Priority Tax Claim of Georgia Department of Revenue

The Georgia Department of Revenue ("GDR") filed proof of claim number 2 on October 10, 2017 in the amount of $710,544.86 consisting of (i) an asserted secured claim in the amount of $371,044.28 (the "Asserted GDR Secured Claim"), (ii) an asserted priority unsecured claim in the amount of $281,956.04 (the "Asserted GDR Priority Tax Claim") and (ii) an asserted general unsecured claim in the amount of $57,544.54 (the "Asserted GDR General Unsecured Claim").

The Court established November 17, 2017 as the Bar Date for filing proofs of claim. Any claim asserted or assertable by the GDR on or before the Filing Date or treated as arising prior to the Filing Date pursuant to 11 U.S.C. §502(i) but not asserted by the IRS by the Bar Date shall: (i) be time barred and fixed as provided in the Plan and (ii) any other, additional or amended claim assessable on or prior to the Filing Date shall be disallowed in its entirety and forever discharged. Debtor shall pay any claim of the GDR assessable, arising prior to the Filing Date or treated as arising prior to the Filing Date pursuant to 11 U.S.C. §502(i) on the terms herein, and the GDR shall be permanently enjoined from seeking payment in excess of the amounts provided for in the Plan for such claims.

#### 4.3.1   Class 3A GDR Secured Claim

The Asserted GDR Secured Claim is based on the following asserted GDR Tax Liens attached to the GDR proof of claim listed in the order of priority:

| GDR Tax Lien | Tax Period | Lien Recorded | County Recorded | Book and Page | Amount | Execution # |
|---|---|---|---|---|---|---|
| "GDR LIEN 1" | 2007 | 4/12/2011 | Gwinnett | Book: 3291 Page: 270 | $252,447.18 | REV 11044466 |
| "GDR LIEN 2" | 2010 | 1/16/2015 | Gwinnett | Book: 4316 Page: 220 | $102,802.20 | REV 140332379 |
| "GDR LIEN 3" | 2015 | 4/10/2017 | Gwinnett | Book: 4831 Page: 201 | $69.738.43 | REV 160411782 |

The GDR Tax Liens are secured by certain of Debtor's pre-petition assets as detailed below and defined as the "GDR Collateral". The GDR Collateral has a total value of $1,299,850.00. The GDR Collateral is subject to senior liens held by Bank of America totaling $233,665.94 (as further detailed in Class 1).  Additionally, as to GDR Lien 2 and GDR Lien 3, the GDR Collateral is subject to asserted senior liens held by the Internal Revenue Service totaling $3,004,445.17 (as detailed in Class 3) consisting of:

     (vi)     Bank of America, Class 1A, $193,242.43 securing Debtor's Sugarloaf Property;
     (vii)     Bank of America, Class 1B, $40,423.74 securing Debtor's Sugarloaf Property;
     (viii)     Internal Revenue Service, Asserted IRS Secured Claim $3,004,445.17.

Accordingly, the GDR Lien 1 shall continue and attach to the GDR Collateral to the same priority and validity as existed on the Filing Date provided that the GDR Lien 1 shall attach to each specific piece of GDR Collateral only to the extent of the value set forth in "Extent of GDR 1st Priority Lien" column below, for a total Class 3A GDR Secured Tax Claim of $252,447.18 (the "Class 3A GDR Secured Claim").

### "GDR Collateral" for Class 3A

| GDR Collateral | Scheduled Value | Security Deed Claims | Extent of GDR 1st Priority Lien (i.e. GDR Lien 1, Rev 11044466) | IRS 2nd Priority Tax Liens | Value for GDR Junior Priority Liens |
|---|---|---|---|---|---|
| Sugarloaf Property, Gwinnett County, GA | $1,200,000 | $233,665.94 | $252,447.18 | | -$2,290,558.29 |
| 1993 Prevost | $20,000 | $0 | $20,000.00 | | -$3,004,445.17 |
| Household Furnishings | $25,000 | $0 | $25,000.00 | | -$3,004,445.17 |
| Electronics | $1,500 | $0 | $1,500.00 | | -$3,004,445.17 |
| Memorabilia | $5,000 | $0 | $5,000.00 | | -$3,004,445.17 |
| Guitars | $6,000 | $0 | $6,000.00 | $3,004,445.17 | -$3,004,445.17 |
| Sports Equipment | $750 | $0 | $750.00 | | -$3,004,445.17 |
| Firearms | $250 | $0 | $250.00 | | -$3,004,445.17 |
| Clothing and Shoes | $1,500 | $0 | $1,500.00 | | -$3,004,445.17 |
| Wedding Ring | $100 | $0 | $100.00 | | -$3,004,445.17 |
| Cash | $37,500 | $0 | $37,500.00 | | -$3,004,445.17 |
| Peachtree Data, Inc. (50% Interest) | 500 | $0 | 500 | | -$3,004,445.17 |
| Savings Account | $1,000 | $0 | $1,000.00 | | -$3,004,445.17 |

| GDR Collateral | Scheduled Value | Security Deed | Extent of GDR 1st | IRS 2nd Priority Tax | Value for GDR Junior |
|---|---|---|---|---|---|
| Checking Account | $750 | $0 | $750.00 | | -$3,004,445.17 |
| Guardian Life Insurance | $0 | $0 | $0.00 | | -$3,004,445.17 |
| Claim Against Willene S. Morris | 0 | $0 | 0 | | -$3,004,445.17 |
| Claim against Joes on Juniper, Hudson Grill Midtown, and Einstein's | 0 | $0 | 0 | | -$3,004,445.17 |
| | $1,299,850 | $233,666 | $352,297 | $3,004,445.17 | $0.00 |

The GDR Lien 2 and GDR Lien 3 (The "GDR Junior Priority Liens") shall be cancelled, discharged and of no further force or effect as of the Confirmation Date and shall attach to the GDR Collateral to the extent of $0.00 and the balance of the GDR asserted secured claim in the amount $172,540.63 shall be specifically reclassified and treated as a Class 7 General Unsecured Claim.

Debtor is authorized to sell his assets including the GDR Collateral free and clear of liens and pay the proceeds of such sale in the order of priority of lien as detailed in the Sale Procedures in Article 4.9 of the Plan. The Sale Procedures are adopted in Class 3A and apply to Class 3A as if restated verbatim herein.   Specifically, Debtor is authorized to sell the assets, including the GDR Collateral, free and clear of any asserted GDR Lien, including the Class 3A Secured Claim and GDR Lien 1, and pay any proceeds from the sale of such assets after payment of customary closing costs: (i) first to cover any *ad valorem* or personal property taxes associated with the particular property, (ii) then allowed secured claims in order of priority, to the extent of available proceeds, and (iii) then to fund Debtor's other obligations as set forth in the Plan.  The GDR Secured Tax Claim shall only attach to the aforementioned assets to the extent of the value set forth in "Extent of GDR 1st Priority Lien" column.  Accordingly, in the event Debtor liquidates, sells or refinances any of the GDR Collateral, the GDR shall release its lien for a payment equivalent to the *lesser* of: (i) the Extent of GDR 1st Priority Lien for the particular asset (ii) the outstanding Class 3A GDR Secured Claim and (iii) the Release Price (defined in the Sale Procedures).

Debtor shall pay the allowed Class 3A GDR Secured Claim from (i) the sale of assets detailed herein, (ii) in equal quarterly payments of $500 each commencing on the 1st day of the first quarter following the Effective Date and continuing on or by the 1st day of each subsequent quarter (or the next Business Day if the 1st day is not a business day) for a period of 4 years and (iii) through additional principal reduction payments as Debtor may be able to make from any earnings of Debtor or loan proceeds obtained by Debtor.  Interest shall accrue on the principal tax due amount of the Allowed Class 3A GDR Secured Claim from the Effective Date at the annual rate of 7.75% or such lesser rate as (i) agreed to by the GDR or (ii) indicated on the applicable GDR proof of claim.  Notwithstanding anything to the contrary herein, Debtor shall pay the balance of the Allowed Class 3A GDR Secured Claim with a balloon payment on the 5-

year anniversary of the Filing Date (i.e. September 4, 2022) unless the GDR agrees to a longer payment term, which such agreement may be communicated by continued acceptance of monthly payments after September 4, 2022. Any third-party payments or payments in excess of the scheduled distribution pursuant to Class 3A received by the GDR shall be applied to the principal tax obligation owed by Debtor pursuant to Class 3A. Debtor's Class 3A payments shall be applied (i) first to interest accruing under the Plan, (ii) second to the principal balance and (iii) then to interest which accrued prior to the Filing Date.

### 4.3.2    Class 3B GDR Priority Claim

The Class 3B GDR Priority Claim is asserted in the amount of $281,956.04 (the "Class 3B GDR Priority Claim"). Debtor shall pay the allowed Class 3B GDR Priority Claim in equal quarterly payments of $26,409.00 each commencing on the 1st day of the first anniversary of the Effective Date and continuing by the 1st day of each subsequent quarter (or the next Business Day if the 1st day is not a business day) for a period of 3 years. Interest shall accrue on the principal amount due from the Effective Date at the annual rate of 7.75% or such lesser rate as (i) agreed to by the GDR or (ii) indicated on the applicable GDR proof of claim. Notwithstanding anything to the contrary herein, Debtor shall pay the balance of the allowed Class 3B GDR Priority Claim with a balloon payment on the 5 year anniversary of the Filing Date (i.e. September 4, 2022) unless the GDR agrees to a longer payment term. Any third-party payments or payments in excess of the scheduled distribution pursuant to Class 3B received by the GDR shall be applied to the principal tax obligation owed by Debtor pursuant to Class 3B. Debtor's Class 3B payments shall be applied (i) first to interest accruing under the Plan, (ii) second to the principal balance and (iii) then to interest which accrued prior to the Filing Date.

### 4.3.3    Class 3C GDR General Unsecured Claim

The GDR proof of claim included a general unsecured in the amount of $76,791.64, and pursuant to reclassification of certain asserted secured claims in Class 3A above, the GDR additionally holds general unsecured claims in the amount of $172,540.63. Accordingly, the GDR General Unsecured Claim in the amount of $249,332.27 is specifically classified as a Class 7 general unsecured claim and shall be treated and paid as a Class 7 general unsecured claim.

A failure by the Debtor to make a payment under Class 3 to the GDR pursuant to the terms of the Plan shall be an event of default as to the GDR. In the event of a default under Class 3, the GDR must send a Default Notice to Debtor in accordance with Article 2.3 of the Plan. Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default and the address for payment, which will accept overnight deliveries. Receipt by Debtor's Attorney shall not be deemed receipt by Debtor of the required Default Notice. In the event of an uncured default following proper Default Notice procedures and opportunity to cure pursuant to Article 2.3 of the Plan, the GDR may exercise any and all rights and remedies it may have under applicable non-bankruptcy law regarding the allowed Class 3 GDR Secured and Priority Tax Claims and seek such relief as may be appropriate in the Bankruptcy Court.

The amount of any claim of the GDR that is not otherwise assessable or due and payable

on or prior to the Effective Date, and the right of the GDR, if any, to payment in respect thereto shall (i) be determined in the manner in which the amount of such Claim and the rights of the GDR would have been resolved or adjudicated if the Bankruptcy Case had not been commenced, (ii) survive after the Effective Date as if the Bankruptcy Case had not been commenced, and (iii) not be discharged pursuant to section 1141 of the Bankruptcy Code.  However, the rights and treatment of the GDR and obligations and liability of Debtor or its property regarding any claim of the GDR against Debtor which was assessable or due and payable prior to the Effective Date shall be treated and fixed in accordance with the Plan, and any additional or other claims assessable or due and payable prior to the Effective Date and not timely asserted by the GDR in accordance with the Bankruptcy Code and the Plan and in all instances prior to entry of the Confirmation Order, shall be forever barred.  Debtor reserves the right to pay any tax claim in full at any time.

The Claim of the Class 3 Creditor is Impaired by the Plan and the holder of the Class 3 Claim is entitled to vote to accept or reject the Plan. Nothing herein shall constitute an admission as to the nature, validity, or amount of such claim. Debtor reserves the right to object to any and all claims.

### 4.4    Class 4:          Priority and Secured Tax Claims of Carroll County, Georgia

The Carroll County Tax Commissioner ("Carroll County") filed proof of claim number 5 on November 1, 2017 in the amount of $2,152.77 (the "Class 4 Carroll County Tax Claim") consisting of ad valorem taxes and charges for year 2017 for the Center Point Property and 4.07 Acres on Pleasant Hill Rd. Debtor shall pay the Class 4 Carroll County Tax Claim in four equal quarterly installments beginning on the Effective Date and continuing on the first day of the following quarter for a total of 4 payments. (or the next Business Day if the first day is not a Business Day), with interest accruing at the annual rate of 7.75% (or at the rate otherwise as required by the Bankruptcy Code), with a final balloon payment on the 5th anniversary of the Filing Date (i.e. September 5, 2022).  Debtor reserves the right to pay the Class 4 Carroll County Tax Claim in full at any time.

A failure by the Debtor to make a payment under Class 4 to Carroll County pursuant to the terms of the Plan shall be an event of default as to Carroll County.  In the event of a default under Class 4, Carroll County must send a Default Notice to Debtor in accordance with Article 2.3 of the Plan in order to exercise default remedies. Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default and the address for payment, which will accept overnight deliveries, in the event of a monetary default.  Receipt by Debtor's Attorney shall not be deemed receipt by Debtor of the required Default Notice.  In the event of an uncured default following proper Default Notice procedures and opportunity to cure pursuant to Article 2.3 of the Plan, Carroll County may (a) enforce the entire amount of its then outstanding allowed Class 4 Carroll County Tax Claim; (b) exercise any and all rights and remedies it may have under applicable non-bankruptcy law regarding the allowed Class 4 Carroll County Tax Claim; and (c) seek such relief as may be appropriate in the Bankruptcy Court.

The amount of any claim of Carroll County that is not otherwise assessable or due and

payable on or prior to the Effective Date, and the right of the Carroll County, if any, to payment in respect thereto shall (i) be determined in the manner in which the amount of such Claim and the rights of the Carroll County would have been resolved or adjudicated if the Bankruptcy Case had not been commenced, (ii) survive after the Effective Date as if the Bankruptcy Case had not been commenced, and (iii) not be discharged pursuant to section 1141 of the Bankruptcy Code. However, the rights and treatment of Carroll County and obligations and liability of Debtor or its property regarding any claim of Carroll County against Debtor which was assessable or due and payable prior to the Effective Date shall be treated and fixed in accordance with the Plan, and any additional or other claims assessable or due and payable prior to the Effective Date and not timely asserted by Carroll County in accordance with the Bankruptcy Code and the Plan and in all instances prior to entry of the Confirmation Order, shall be forever barred. Debtor reserves the right to pay any tax claim in full at any time.

The Claim of the Class 4 Creditor is Impaired by the Plan and the holder of the Class 4 Claim is entitled to vote to accept or reject the Plan. Nothing herein shall constitute an admission as to the nature, validity, or amount of such claim. Debtor reserves the right to object to any and all claims.

### 4.5    Class 5:        Priority and Secured Tax Claims of Governmental Units

Class 5 shall consist of any Priority or Secured Claim of a governmental unit entitled to priority under 11 U.S.C. §507(a)(8), which are not otherwise specifically classified in the Plan ("Class 5 Governmental Unit Tax Claim"). Debtor is not aware of any Holders of Class 5 Governmental Unit Tax Claim not otherwise classified in the Plan. In the event there are Allowed Holders of Class 5 Governmental Unit Tax Claims, Debtor shall pay such Allowed Class 5 Government Unit Tax Claims at the rate of $100 per month commencing on the Effective Date and continuing by the 28th day of each subsequent month (or the next Business Day if the 28th day is not a Business Day), with interest accruing at the annual rate of 3.5% (or at the rate otherwise as required by the Bankruptcy Code), with a final balloon payment on the 5th anniversary of the Filing Date (i.e. August 2, 2021). Debtor reserves the right to pay any Class 5 Governmental Unit Tax Claim in full at any time.

A failure by the Debtor to make a payment under Class 5 to the Holder of a Class 5 Governmental Unit Tax Claim pursuant to the terms of the Plan shall be an event of default as to such Governmental Unit. In the event of a default under Class 5, the Holder of a Class 5 Governmental Unit Tax Claim must send a Default Notice to Debtor in accordance with Article 2.3 of the Plan in order to exercise the default remedies. Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default and the address for payment, which will accept overnight deliveries. Receipt by Debtor's Attorney shall not be deemed receipt by Debtor of the required Default Notice. In the event of an uncured default following proper Default Notice procedures and opportunity to cure pursuant to Article 2.3 of the Plan, the Holder of a Class 5 Governmental Unit Tax Claim may (a) enforce the entire amount of its then outstanding Allowed Class 5 Governmental Unit Tax Claim; (b) exercise any and all rights and remedies it may have under applicable non-bankruptcy law regarding the Allowed Class Governmental Unit Tax Claim; and (c) seek such relief as may be appropriate in the Bankruptcy Court.

The amount of any claim of a governmental unit that is not assessed or assessable on or prior to the Effective Date, and the right of the particular governmental unit, if any, to payment in respect thereto shall (i) be determined in the manner in which the amount of such Claim and the rights of the particular governmental unit would have been resolved or adjudicated if the Bankruptcy Case had not been commenced, (ii) survive after the Effective Date as if the Bankruptcy Case had not been commenced, and (iii) not be discharged pursuant to section 1141 of the Bankruptcy Code if applicable. However, the rights and treatment of a governmental unit and obligations and liability of Debtor or its property regarding any claim of a governmental unit against Debtor which was assessable or due and payable prior to the Effective Date shall be treated and fixed in accordance with the Plan, and any additional, other or amended claims assessable or due and payable prior to the Effective Date and not timely asserted or amended by a governmental unit in accordance with the Bankruptcy Code and the Plan and in all instances prior to entry of the Confirmation Order, shall be forever barred. Debtor reserves the right to pay any tax claim in full at any time.

The Holder of an Allowed Class 5 Governmental Unit Priority Tax Claim is impaired and entitled to vote to accept or reject the Plan. Nothing contained herein shall prohibit Debtor from objecting to the Class 5 Claims for any reason.

**4.6    Class 6:          Priority and Secured Tax Claims of Gwinnett County, Georgia**

The Gwinnett County Tax Commissioner ("Gwinnett County") holds a claim in the approximate amount of $15,465.18 (the "Class 6 Gwinnett County Tax Claim") consisting of ad valorem taxes and charges for year 2017 for the Sugarloaf Property, Debtor shall pay such allowed Class 6 Gwinnett County Tax Claim at the rate of $407 per month commencing on the Effective Date and continuing by the 28th day of each subsequent month (or the next Business Day if the 28th day is not a Business Day), with interest accruing at the annual rate of 7.75% (or at the rate otherwise as required by the Bankruptcy Code), with a final balloon payment on the 5th anniversary of the Filing Date (i.e. September 5, 2022). Debtor reserves the right to pay the Class 6 Gwinnett County Tax Claim in full at any time.

A failure by the Debtor to make a payment under Class 6 to Gwinnett County pursuant to the terms of the Plan shall be an event of default as to Gwinnett County. In the event of a default under Class 6, Gwinnett County must send a Default Notice to Debtor in accordance with Article 2.3 of the Plan. Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default and the address for payment, which will accept overnight deliveries, in the event of a monetary default. Receipt by Debtor's Attorney shall not be deemed receipt by Debtor of the required Default Notice. In the event of an uncured default following proper Default Notice procedures and opportunity to cure pursuant to Article 2.3 of the Plan, Gwinnett County may (a) enforce the entire amount of its then outstanding allowed Class 6 Gwinnett County Tax Claim; (b) exercise any and all rights and remedies it may have under applicable non-bankruptcy law regarding the allowed Class 6 Gwinnett County Tax Claim; and (c) seek such relief as may be appropriate in the Bankruptcy Court.

The amount of any claim of Gwinnett County that is not otherwise assessable or due and payable on or prior to the Effective Date, and the right of the Gwinnett County, if any, to payment in respect thereto shall (i) be determined in the manner in which the amount of such Claim and the rights of the Gwinnett County would have been resolved or adjudicated if the Bankruptcy Case had not been commenced, (ii) survive after the Effective Date as if the Bankruptcy Case had not been commenced, and (iii) not be discharged pursuant to section 1141 of the Bankruptcy Code.  However, the rights and treatment of Gwinnett County and obligations and liability of Debtor or its property regarding any claim of Gwinnett County against Debtor which was assessable or due and payable prior to the Effective Date shall be treated and fixed in accordance with the Plan, and any additional or other claims assessable or due and payable prior to the Effective Date and not timely asserted by Gwinnett County in accordance with the Bankruptcy Code and the Plan and in all instances prior to entry of the Confirmation Order, shall be forever barred.  Debtor reserves the right to pay any tax claim in full at any time.

The Claim of the Class 6 Creditor is Impaired by the Plan and the holder of the Class 6 Claim is entitled to vote to accept or reject the Plan. Nothing herein shall constitute an admission as to the nature, validity, or amount of such claim. Debtor reserves the right to object to any and all claims.

### 4.7   Class 7:      General Unsecured Claims

Class 7 shall consist of the general unsecured claims including deficiency claims pursuant to 11 U.S.C. §§ 506 and 522(f). Debtor shall pay the General Unsecured Creditors a pro-rata share of $200,000.00 paid in 4 quarterly payments of $50,000.00 each, commencing on the 1st day of the 1st quarter of the 4th anniversary of Effective Date and continuing on or by the 1st day of each subsequent quarter for a total of 4 payments.  Debtor anticipates, but does not warrant, the following Holders of Class 7 General Unsecured Claims and the following distributions:

| Anticipated Holders | Est. Claim | Quarterly Distrib. | Total Distrib. |
|---|---|---|---|
| Atlanta Sports Restaurant, LLC | $0.00[2] | $0.00 | $0.00 |
| Atlanta's Best Patio, LLC | $0.00[3] | $0.00 | $0.00 |
| Bank of America | $23,500.00 | $432.91 | $1,731.62 |
| Eat At Joe's, LLC | $0.00[4] | $0.00 | $0.00 |
| Georgia Department of Revenue | $249,332.72 | $4,593.09 | $18,372.36 |
| Internal Revenue Service | $1,926,606.90 | $35,491.05 | $141,964.18 |

[2] Debtor scheduled Atlanta Sports Restaurants, LLC ("ASR") as disputed and no proof of claim was filed by the Claims Bar Date. Accordingly, ASR's Class 7 General Unsecured Claim is $0.00.

[3] Debtor scheduled Atlanta's Best Patio, LLC ("ABP") as disputed and no proof of claim was filed by the Claims Bar Date. Accordingly, ABP's Class 7 General Unsecured Claim is $0.00.

[4] Debtor scheduled Eat at Joe's, LLC ("EAJ") as disputed and no proof of claim was filed by the Claims Bar Date. Accordingly, EAJ's Class 7 General Unsecured Claim is $0.00.

| Anticipated Holders | Est. Claim | Quarterly Distrib. | Total Distrib. |
|---|---|---|---|
| John Flood | $109,387.00 | $2,015.08 | $8,060.30 |
| Steve Mudder | $355,388.82 | $6,546.81 | $26,187.22 |
| Vesta Ayers | $50,000.00 | $921.08 | $3,684.31 |
| **Total** | **$2,714,215.44** | **$50,000.00** | **$200,000.00** |

The Claims of the Class 7 Creditors are Impaired by the Plan and the holders of a Class 7 Claim are entitled to vote to accept or reject the Plan.

Nothing herein shall constitute an admission as to the nature, validity, or amount of a claim. Debtor reserves the right to object to any and all claims.

### 4.8    Class 8: Debtor's Interest and New Value

Debtor shall retain all of Debtor's assets free and clear of any claims, liens or encumbrances except as specifically set forth in the Plan. In the event that Class 7 does not vote to accept the Plan as a class, and the Court determines the "absolute priority rule[5]" is applicable in this Bankruptcy Case, Debtor proposes the following "new value." Debtor shall contribute $25,000.00 of non-bankruptcy estate property, or such other amount as the Court shall deem necessary and appropriate, as new value. Specifically, Debtor shall obtain $25,000.00 to contribute as "new value" to Debtor's obligations under the Plan by one or a combination of the following sources: obtaining a gift of such funds from Debtor's wife or other relative of Debtor. Debtor's contribution of "new value" under the Plan shall also include Debtor's payments of administrative expenses and payments to unsecured creditors under the Plan. New value is the vehicle through which current equity holders purchase the equity interest of the reorganized Debtor; or in the case of an individual debtor, the individual "purchases" Debtor's retained assets back from the Bankruptcy Estate. Efforts of the Debtor to retain the retained assets may be subject to competing bids in the market place under certain circumstances. Specifically if the classes of unsecured claims do not vote to accept the Plan as a class as set forth in this provision, then, in that event third parties may be able to purchase the retained assets of the Debtor, subject to the Debtor's exemptions, if any, by appearing at the confirmation hearing and submitting a higher bid for the assets subject to the terms of this Plan. The requirement for, sufficiency and validity of any such bid shall be subject to the approval and review of the Court at the Confirmation Hearing. Any New Value contributed by Debtor or on Debtor's behalf will be distributed in accordance with the priorities set forth in the Bankruptcy Code.

---

[5] Debtor shows that the absolute priority rule is not applicable to individual chapter 11 cases. However, a split of authority exists on this issue. To the extent the absolute priority rule is deemed applicable, Debtor provides this provision which shall be applicable only in such event. Debtor does not waive the right to show that the absolute priority rule is not applicable to individual chapter 11 cases following the 2005 amendments to the Bankruptcy Code including 11 U.S.C. §1115.

### 4.9    Sale Procedures

After the Confirmation Date, Debtor is authorized to sell or refinance his assets, specifically including his real and personal property, free and clear of liens, claims and encumbrances as set forth herein (the "Sale Procedures").   In the event the applicable assets are subject to secured claims, Debtor is authorized to sell or refinance such property free and clear of liens, claims and encumbrances on the following terms:

Debtor may sell or refinance such property for any amount (a release amount) that is at least equal to the lesser of: (a) the Fair Market Value and (b) the outstanding amount of Allowed Secured Claims securing such property[6].

Such amounts are referred to in the Plan as the "Release Amount."  Unless the Court specifically establishes the value of a particular asset at the Confirmation Hearing and such value is set forth in the Confirmation Order, the Fair Market Value will be the Value provided as the "Scheduled Value" as set forth in Class 2A and 3A of the Plan and the "Pre Liquidation Value" in the Liquidation Analysis of the Disclosure Statement.  The Release Amount, after payment of customary closing costs including broker fees and other items customarily attributed to the seller (in a sale) and borrower (in a refinancing), shall be paid as follows: (i) first to cover any *ad valorem* or personal property taxes associated with the particular asset, (ii) then secured claims in order of priority, to the extent of available proceeds, and (iii) then to fund Debtor's other obligations as set forth in the Plan.  To the extent that any Allowed Secured Claim is not satisfied and paid in full pursuant to the provision of the Sale Procedures set forth in Article 4.9 of the Plan, such unpaid amount shall be provided for and paid as General Unsecured Claim in Class 7.

### Article 5
### Treatment of Unclassified Claims

5.1    <u>Summary</u>.    Pursuant to Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims against Debtor are not classified for purposes of voting on or receiving distributions under this Plan.  Holders of such Claims are not entitled to vote on this Plan.  All such claims are instead treated separately in accordance with Article 5 of the Plan and in accordance with the requirements set forth in Section 1129(a)(9)(A) of the Bankruptcy Code.

With respect to potential Administrative Expense Claims, Debtor, pursuant to Court order, retained the law firm of Jones & Walden, LLC ("Firm") to serve as bankruptcy counsel.  As set forth in the employment application and supporting documents, the Firm received a prepetition retainer in the amount of $20,000.00.  As of the date hereof, the fees and expenses incurred by the Firm have exceeded the retainer.  Debtor shall pay any unpaid allowed Administrative Expense Claim held by the Firm on the Effective Date unless otherwise agreed to by the Firm.  Debtor is paying post-petition bills and does not expect any claims for unpaid post-

---

[6] In the event of a sale or refinancing of IRS Collateral or GDR Collateral, the correlating Extent of IRS Lien and Extent of GDR 1st Priority Lien shall be the applicable Allowed Secured Claim for purpose of analyzing the Release Amount rather than the total Class 2A IRS Secured Claim and Class 3A GDR Secured Claim.

petition goods and services other than possible professional fees.  Debtor will incur quarterly trustee fees which Debtor intends to pay when due.

    5.2    <u>Administrative Expense Claims</u>.

    5.2.1    Subject to the provisions of sections 328, 330(a) and 331 of the Bankruptcy Code, each holder of an Allowed Administrative Expense Claim will be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash on the latest of (1) the Effective Date, (ii) as soon as practicable after the date on which such Claim becomes an Allowed Administrative Expense Claim, (iii) upon such other terms as may be agreed upon by such holder and Debtor, or (iv) as otherwise ordered by the Bankruptcy Court; provided, however, that Allowed Administrative Expense Claims representing obligations incurred by Debtor in the ordinary course of business after the Filing Date, or otherwise assumed by Debtor on the Effective Date pursuant to this Plan, including any tax obligations arising after the Effective Date, will be paid or performed by Debtor when due in accordance with the terms and conditions of the particular agreements or non-bankruptcy law governing such obligations.

    5.2.2    Except as otherwise provided in this Plan, any Person holding an Administrative Expense Claim, other than an Administrative Expense Claim arising from the operation by Debtor of its business in the ordinary course of business, shall file a proof of such Administrative Expense Claim with the Bankruptcy Court within thirty (30) days after the Confirmation Date.  At the same time any Person files an Administrative Expense Claim, such Person shall also serve a copy of the Administrative Expense Claim upon counsel for Debtor.  Any Person who fails to timely file and serve a proof of such Administrative Expense Claim shall be forever barred from seeking payment of such Administrative Expense Claims by Debtor or the Estate.

    5.2.3    Any Person seeking an award by the Bankruptcy Court of Professional Compensation shall file a final application with the Bankruptcy Court for allowance of Professional Compensation for services rendered and reimbursement of expenses incurred through the Effective Date within thirty (30) days after the Confirmation Date or by such other deadline as may be fixed by the Bankruptcy Court.

    Debtor may pay professional fees incurred after confirmation of the Plan without Court approval.  Debtor shall pay all pre-confirmation fees of professionals as payment of same is approved by the Court.

**Article 6**
**Means for the Implementation of the Plan**

    6.1    <u>Parties Responsible for Implementation of the Plan</u>.  Upon confirmation, Debtor will be charged with administration of the Case.  Debtor will be authorized and empowered to take such actions as are required to effectuate the Plan. Debtor will file all post-confirmation reports required by the United States Trustee's office.  Debtor will also file the necessary final reports and will apply for a final decree as soon as practicable after substantial consummation and the completion of the claims analysis and objection process.  Debtor may be authorized to

reopen this case after the entry of a Final Decree to enforce the terms of the Plan including for the purpose of seeking to hold a party in contempt or to enforce the confirmation or discharge injunction or otherwise afford relief to Debtor. The fee associated with the Debtor's motion to reopen Debtor's case may be waived, and Debtor may not be responsible for payment of such to the Clerk of Court for the Bankruptcy Court of the Northern District of Georgia or otherwise.

    6.2    <u>Sources of Cash for Distribution</u>.

Debtor shall pay all claims from the sale of Debtor's real property and Debtor's post-petition income. Debtor shows that he will pay administrative expense claims from the "new value" included in Class 8 of the Plan or from some other source if no "new value" contribution under Class 8 is required. Debtor will receive a disbursement from the Chapter 7 bankruptcy case of Mega Amusement, LLC pending in the United States Bankruptcy Court, Northern District of Georgia, Case No. 14-59503 and will use the proceeds to fund Debtor's Plan obligations.

The Plan provides that Debtor shall act as the Disbursing Agent to make payments under the Plan unless Debtor appoints some other person or entity to do so. Debtor may maintain bank accounts under the confirmed Plan in the ordinary course of business. Debtor may also pay ordinary and necessary expenses of administration of the Plan in due course.

    6.3    <u>Preservation of Causes of Action</u>. In accordance with section 1123(b)(3) of the Bankruptcy Code, Debtor will retain and may (but is not required to) enforce all Retained Actions. After the Effective Date, Debtor, in its sole and absolute discretion, shall have the right to bring, settle, release, compromise, or enforce such Retained Actions (or decline to do any of the foregoing), without further approval of the Bankruptcy Court. Debtor (or any successors, in the exercise of their sole discretion), may pursue such Retained Actions so long as it is the best interests of Debtor (or any successors holding such rights of action). The failure of Debtor to specifically list any claim, right of action, suit, proceeding or other Retained Action in this Plan does not, and will not be deemed to, constitute a waiver or release by Debtor of such claim, right of action, suit, proceeding or other Retained Action, and Debtor will retain the right to pursue such claims, rights of action, suits, proceedings and other Retained Actions in their sole discretion and, therefore, no preclusion doctrine, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches will apply to such claim, right of action, suit, proceeding or other Retained Actions upon or after the confirmation or consummation of this Plan. Debtor reserves all causes of actions for breach of any former or now existing agreement or otherwise. Debtor specifically reserves any cause of action against any of Debtor's account debtors related to underpayment or non-payment of any fees, or other monies or receivables due. Neither the Disclosure Statement nor Plan shall be deemed a waiver of any right of Debtor to collect any receivable or right to payment under any applicable laws. Debtor expressly reserves the right to exercise any and all remedies available to Debtor regarding its accounts receivable or rights to payment at law or in equity, at such time or times as Debtor from time to time may elect. The Disclosure Statement and Plan are filed with a full reservation of rights. Any failure by Debtor to assert or set forth the occurrence of any other default or events of default which may have occurred shall not be deemed to be a waiver, release or estoppel of such other default or event of default. Debtor hereby expressly reserves the right to declare any such other default or event of default and to take such other action as Debtor may be

entitled to applicable law. No delay on the part of Debtor in exercising any right or remedy shall operate as a waiver in whole or in part of any right or remedy. The Disclosure Statement and Plan are filed with a full reservation of rights

6.4    <u>Effectuating Documents, Further Transactions</u>.  Debtor is authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such action as may be necessary, desirable or appropriate to effectuate and further evidence the terms and conditions of this Plan or to otherwise comply with applicable law.

6.5    <u>Exemption from Certain Transfer Taxes and Recording Fees</u>.  Pursuant to 11 U.S.C. §1146(a), OCGA §48-6-65(a)(2), Ga. Comp. R. & Regs. R. 560-11-8.14 and any other applicable laws, codes or regulations, any transfers from Debtor to any other Person or entity pursuant to or in contemplation of this Plan, or any agreement regarding the transfer of title to or ownership of any of Debtor's real or personal property will not be subject to any document recording tax, stamp tax, conveyance fee, sales tax, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment. Without limitation of the foregoing, the Confirmation Order may direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

6.6    <u>Further Authorization</u>.  Debtor shall be entitled to seek such orders, judgments, injunctions and rulings as it deems necessary or desirable to carry out the intentions and purposes, and to give full effect to the provisions, of this Plan.

6.7    <u>Liabilities of the Debtor</u>.     Debtor will not have any liabilities except those expressly stated or assumed under the Plan. Debtor will be responsible for all expenses incurred by Debtor in the ordinary course of business after the Filing Date, and those expenses will be paid in the ordinary course of business as they become due or as agreed upon by holders of the expense claim.

**Article 7**
**<u>Distributions</u>**

7.1    <u>Disbursing Agent</u>.  Unless otherwise provided for herein, all Distributions under this Plan shall be made by the Debtor or its agent.

7.2    <u>Distributions of Cash</u>.  Any Distribution of Cash made by Debtor pursuant to this Plan shall, at Debtor's option, be made by check drawn on a domestic bank or by wire transfer from a domestic bank.

7.3    <u>No Interest on Claims or Interests</u>.  Unless otherwise specifically provided for in this Plan, the Confirmation Order, or a postpetition agreement in writing between the Debtor and a Holder, postpetition interest shall not accrue or be paid on Claims, and no Holder shall be

entitled to interest accruing on or after the Filing Date on any Claim.

      7.4    <u>Delivery of Distributions</u>.  The Distribution to a Holder of an Allowed Claim shall be made by Debtor (a) at the address set forth on the proof of claim filed by such Holder, (b) at the address set forth in any written notices of address change delivered to Debtor after the date of any related proof of claim, (c) at the addresses reflected in the Schedules if no proof of claim has been filed and Debtor has not received a written notice of a change of address, or (d) if the Holder's address is not listed in the Schedules, at the last known address of such Holder according to the Debtor's books and records.

      If any Distribution on an Unsecured Claim ("Unsecured Distribution") is tendered by Debtor to a Holder of an Unsecured Claim and returned as undeliverable, refused or otherwise returned ("Unsecured Distribution Refusal"), Debtor shall not be responsible for making any further Unsecured Distribution on account of such Unsecured Claim.  Accordingly, in the event of an Unsecured Distribution Refusal, Debtor shall be relieved of any obligation to make said payment or Distribution and Debtor is relieved of any obligation to make further payments or Distributions on such Unsecured Claim under the Plan.

      If any Distribution on a Secured Claim or Priority Claim ("Secured or Priority Distribution") is tendered by Debtor to a Holder of a Secured Claim or Priority Claim and returned as undeliverable, refused or otherwise returned ("Secured or Priority Distribution Refusal"), the Holder of such Secured Claim or Priority Claim, as applicable, shall be deemed to have waived its right to such tendered payment or Distribution and such tendered payment or Distribution shall be deemed satisfied.  In the event of a Secured or Priority Distribution Refusal, any obligation of Debtor to make any additional or further payment on such Secured Claim or Priority Claim shall be tolled until such time as: (i) notice is provided to Debtor that the Holder of such Secured Claim or Priority Claim seeks to receive payments from Debtor on the Secured Claim or Priority Claim or otherwise seeks to enforce Debtor's obligations under the Plan or otherwise enforce the Secured Claim or Priority Claim and (ii) any dispute regarding the Secured or Priority Distribution Refusal and its implications is resolved by agreement of the parties or the Bankruptcy Court (the "Tolling Period").  Only in the event of such notice to Debtor shall Debtor's obligations to perform as to the applicable Secured Claim or Priority Claim resume. The Tolling Period shall: (i) extend the term of the payments on such Secured Claim or Priority Claim and (ii) bar any interest from accruing on the Secured Claim or Priority Claim until such time as any dispute regarding the Secured or Priority Distribution Refusal shall be resolved by Final Order.  Notwithstanding anything in the Plan, or any loan document, agreement or otherwise to the contrary, no provision allowing the imposition of late fees, default interest, late charges, damages, or costs and fees against the Debtor or the Debtor's property shall be applicable during the Tolling Period or any period during which a dispute regarding a Tolling Period is being resolved.  For purposes of clarification, Debtor shall not be required to make any lump sum cure of payments or Distributions which would have otherwise come due during (i) the Tolling Period or (ii) any period during which a dispute regarding a Tolling Period is unresolved, and Debtor shall recommence Distributions upon the resolution of such dispute on the terms in the Plan as tolled.

      7.5    <u>Distributions to Holders as of the Record Date</u>.  All Distributions on Allowed

Claims shall be made to the Record Holders of such Claims.  As of the close of business on the Confirmation Date, the Claims register maintained by the Bankruptcy Court shall be closed, and there shall be no further change in the Holder of any Claim.  Debtor shall have no obligation to recognize any transfer of any Claim occurring after the Confirmation Date.  Debtor shall instead be entitled to recognize and deal for all purposes under this Plan with the Record Holders as of the Confirmation Date.

7.6     Fractional Dollars.  Any other provision of this Plan notwithstanding, the Debtor shall not be required to make Distributions or payments of fractions of dollars.  Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, at Debtor's option the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

7.7     Withholding Taxes.  Debtor shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions under this Plan shall be subject to any such withholding and reporting requirements.

**Article 8**
**Procedures for Treating and Resolving Disputed Claims**

8.1     Objections to Claims.  Debtor shall be entitled to object to Claims, provided, however, that Debtor shall not be entitled to object to Claims (i) that have been Allowed by a Final Order entered by the Bankruptcy Court prior to the Effective Date, or (ii) that are Allowed by the express terms of this Plan.

8.2     No Distributions Pending Allowance.  Except as otherwise provided herein, no Distributions will be made with respect to any portion of a Claim unless and until (i) no objection to such Claim has been filed, or (ii) any objection to such Claim has been settled, withdrawn or overruled pursuant to a Final Order of the Bankruptcy Court

8.3     Estimation of Claims. Debtor may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to the Bankruptcy Code regardless of whether Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, Debtor may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.  All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and are not necessarily exclusive of one another.

8.4     Resolution of Claims Objections.  On and after the Effective Date, Debtor shall have the authority to compromise, settle, otherwise resolve, or withdraw any objections to

Claims without approval of the Bankruptcy Court.

## Article 9
### Provision for Assumption of Unexpired Leases and Executory Contracts

9.1    Debtor is not a party to any unexpired executory contracts or leases.    Any unexpired leases or executory contracts which are not expressly assumed pursuant to this Plan or are the subject of a pending motion to assume shall be deemed rejected pursuant to Section 365 of the Bankruptcy Code on the Effective Date.

A proof of claim for damages arising from any executory contracted that is rejected must be filed in compliance with the Bankruptcy Rules on or before thirty (30) days after entry of the Confirmation Order.  Any claims which are not timely filed will be disallowed and discharged.

## Article 10
### Effect of Plan on Claims and Interests

10.1    Except as otherwise explicitly provided in the Plan, upon the Court's entry of the Confirmation Order, all property comprising the Estate (including Retained Actions, but excluding property that has been abandoned pursuant to an order of the Bankruptcy Court) shall revest in Debtor free and clear of all Claims, Liens, charges, encumbrances, rights and Interests of creditors and equity security holders, except as specifically provided in the Plan.  As of the earlier of the Effective Date and the entry of a Final Decree, Debtor may operate its business and use, acquire, and dispose of property and settle and compromise Claims or Interests without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and Confirmation Order.

10.2.    Discharge of the Debtor.  Pursuant to section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in this Plan or in the Confirmation Order, the Distributions and rights that are provided in this Plan shall be in complete satisfaction, discharge, and release of all Claims, whether known on unknown, against, liabilities of, Liens on, obligations of, rights against, Debtor or his Estate that arose prior to the Effective Date.   Debtor does not have a right to a discharge until all the plan payments have been made unless otherwise ordered by the Court pursuant to section 1141(d)(5) of the Bankruptcy Code; however, Debtor has not waived his right to seek entry of a discharge order before completion of all plan payments.  In the event Debtor seeks entry of a discharge order after the entry of a final decree, Debtor may reopen the Case for purposes of obtaining a discharge and the fee associated with the attendant motion to reopen case shall be waived.

Upon entry of a Confirmation Order, the provisions of the Plan bind: (a) Debtor, (b) any entity acquiring property under the Plan, (c) any creditor, (d) any party to an executory contract with Debtor, whether or not the claim or interest of such creditor or equity holder is impaired under the Plan, and whether or not such creditor or equity holder has accepted the Plan.

10.3    Injunction.  Regardless of whether the Court has entered a final decree in the

Bankruptcy Case, all creditors of Debtor, claimants against Debtor, and all persons having or claiming interest of any nature in Debtor's property and assets are enjoined and stayed: from pursuing or attempting to pursue any action, commencing or continuing any action, employing any process or any act against Debtor or his property, on account of or based upon any right, claim, or interest which any such creditor, claimant, or other person may have had at the date of the filing of Debtor's Chapter 11 petition, except with respect to claims, rights, or interest arising out of the Plan or orders of this Court.  In other words and not in limitation of the foregoing, creditors of the Debtor are enjoined from collecting pre-petition debts owed by Debtor except to the extent allowed by the Plan.

10.4    Setoffs.  Debtor may, but shall not be required to, set off against any Claim, and the payments or other Distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that Debtor may have now or in the future against such Holder; but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by Debtor of any such claim that Debtor may have against such Holder.

10.5    Exculpation and Limitation of Liability.  Under the Plan, Debtor's post-Filing Date and pre-Effective Date attorneys, representatives, financial advisors, investment bankers, or agents and any of such parties' successors and assigns (collectively the "Exculpated Parties"), shall not have or incur, and shall be released from, any claim, obligation, cause of action, or liability to one another or to any Holder of any Claim or Interest, or any other party-in-interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or Affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of: (1) the Bankruptcy Case, (2) the negotiation and filing of the Plan, (3) the filing of the Bankruptcy Case, (4) the pursuit of confirmation of the Plan, (5) the consummation of the Plan, or (6) the administration of the Plan or the property to be distributed under the Plan (1 through 6 being hereinafter referred to as a "Bankruptcy Event"), except for their willful misconduct or gross negligence, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. Except as provided by this paragraph, no Holder of any Claim or Interest, or other party in interest, none of their respective agents, employees, representatives, financial advisors, or Affiliates, and successors or assigns of the foregoing, shall have any right of action against the Exculpated Parties listed in this provision for any act or omission in connection with, relating to, or arising out of a Bankruptcy Event.

10.6    Effect of Confirmation.

10.6.1    Binding Effect. On the Confirmation Date, the provisions of the Plan bind: (a) Debtor, (b) any entity acquiring property under the Plan, (c) any creditor, (d) any party to an executory contract with Debtor, whether or not the claim or interest of such creditor or equity holder is impaired under the Plan, and whether or not such creditor or equity holder has accepted the Plan.

10.6.2    Effect of Confirmation on Automatic Stay. Except as provided otherwise in this Plan, from and after the Effective Date, the automatic stay provided in § 362(a) of the Bankruptcy Code shall terminate.

10.6.3  <u>Filing of Reports</u>. Reorganized Debtor shall file all reports and pay all fees required by the Bankruptcy Code, Bankruptcy Rules, U.S. Trustee guidelines, and the rules and orders of the Bankruptcy Court.

10.6.4  <u>Post-Confirmation Retention of Professionals</u>. After entry of the Confirmation Order, any requirement that professionals  comply with §§ 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date will terminate, and the Reorganized Debtor will employ and pay professionals in the ordinary course of business.

**Article 11**
**Conditions Precedent**

11.1  <u>Conditions to the Effective Date</u>.  The following are conditions precedent to the occurrence of the Effective Date, each of which may be satisfied or waived in accordance with Article 11.2 of this Plan.

11.1.1  The Confirmation Order shall not have been vacated, reversed or modified and, as of the Effective Date, shall not be stayed;

11.1.2  All documents and agreements to be executed on the Effective Date or otherwise necessary to implement this Plan shall be in form and substance that is acceptable to Debtor in their reasonable discretion;

11.2  <u>Waiver of Conditions to Confirmation or Consummation</u>.  The conditions set forth in Article 11.1 of this Plan may be waived, in whole or in part, by Debtor without any notice to any other parties in interest or the Bankruptcy Court and without a hearing.  The failure to satisfy or waive any condition to the Confirmation Date or the Effective Date may be asserted by Debtor in its sole discretion regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by Debtor).  The failure of Debtor to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

**Article 12**
**Retention and Scope of Jurisdiction of the Bankruptcy Court**

12.1  <u>Retention of Jurisdiction</u>.  Subsequent to the Effective Date, the Bankruptcy Court shall have or retain jurisdiction for the following purposes:

12.1.1  To adjudicate objections concerning the allowance, priority or classification of Claims and any subordination thereof, and to establish a date or dates by which objections to Claims must be filed to the extent not established herein;

12.1.2  To liquidate the amount of any disputed, contingent or unliquidated Claim, to estimate the amount of any disputed, contingent or unliquidated Claim, to establish the amount

of any reserve required to be withheld from any distribution under this Plan on account of any disputed, contingent or unliquidated Claim;

12.1.3  To resolve all matters related to the rejection, and assumption and/or assignment of any Executory Contract or Unexpired Lease of Debtor;

12.1.4  To hear and rule upon all Retained Actions, Avoidance Actions and other Causes of Action commenced and/or pursued by Debtor;

12.1.5  To hear and rule upon all applications for Professional Compensation;

12.1.6  To remedy any defect or omission or reconcile any inconsistency in this Plan, as may be necessary to carry out the intent and purpose of this Plan;

12.1.7  To construe or interpret any provisions in this Plan and to issue such orders as may be necessary for the implementation, execution and consummation of this Plan, to the extent authorized by the Bankruptcy Court;

12.1.8  To adjudicate controversies arising out of the administration of the Estates or the implementation of this Plan;

12.1.9  To make such determinations and enter such orders as may be necessary to effectuate all the terms and conditions of this Plan, including the Distribution of funds from the Estate and the payment of claims;

12.1.10  To determine any suit or proceeding brought by Debtor to recover property under any provisions of the Bankruptcy Code;

12.1.11  To hear and determine any tax disputes concerning Debtor and to determine and declare any tax effects under this Plan;

12.1.12  To determine such other matters as may be provided for in this Plan or the Confirmation Order or as may be authorized by or under the provisions of the Bankruptcy Code;

12.1.13  To determine any controversies, actions or disputes that may arise under the provisions of this Plan, or the rights, duties or obligations of any Person under the provisions of this Plan;

12.1.14  To adjudicate any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of, or in connection with, any agreement pursuant to which Debtor sold any of their assets during the Bankruptcy Case; and

12.1.15 To enter a final decree.

12.2  <u>Alternative Jurisdiction</u>.  In the event that the Bankruptcy Court is found to lack jurisdiction to resolve any matter, then the District Court shall hear and determine such matter.

If the District Court does not have jurisdiction, then the matter may be brought before any court having jurisdiction with regard thereto.

12.3    Final Decree.  The Bankruptcy Court may, upon application of the Debtor, at any time after "substantial consummation" of the Plan as defined in §1101(2) of the Bankruptcy Code, enter a final decree in the case, notwithstanding the fact that additional funds may eventually be distributed to parties in interest.  In such event, the Bankruptcy Court may enter an Order closing this cases pursuant to section 350 of the Bankruptcy Code, provided, however, that:  (a) the Debtor shall continue to have the rights, powers, and duties set forth in this Plan; (b) any provision of this Plan requiring the absence of an objection shall no longer be required, except as otherwise ordered by the Bankruptcy Court; and (c) the Bankruptcy Court may from time to time reopen the Bankruptcy Case if appropriate for any of the following purposes:  (1) administering Assets; (2) entertaining any adversary proceedings, contested matters or applications the Debtor has brought or brings with regard to the liquidation of Assets and the prosecution of Causes of Action; (3) enforcing or interpreting this Plan or supervising its implementation; (4) entering a discharge order; or (5) for other cause.  Debtor shall be authorized to reopen the Bankruptcy Case for purposes of obtaining a discharge after entry of the final decree and the fee associated with the attendant motion to reopen Debtor's case shall be waived, and Debtor shall not be responsible for payment of such to the Clerk of Court for the Bankruptcy Court of the Northern District of Georgia.

## Article 13
## Miscellaneous Provisions

13.1    Modification of the Plan.  Debtor shall be allowed to modify this Plan pursuant to section 1127 of the Bankruptcy Code to the extent applicable law permits.  Subject to the limitations contained in this Plan, pursuant to Article 13.1 of this Plan, Debtor may modify this Plan, before or after confirmation, without notice or hearing, or after such notice and hearing as the Bankruptcy Court deems appropriate, if the Bankruptcy Court finds that the modification does not materially and adversely affect the rights of any parties in interest which have not had notice and an opportunity to be heard with regard thereto.  In the event of any modification on or before confirmation, any votes to accept or reject this Plan shall be deemed to be votes to accept or reject this Plan as modified, unless the Bankruptcy Court finds that the modification materially and adversely affects the rights of parties in interest which have cast said votes.  Debtor reserves the right in accordance with section 1127 of the Bankruptcy Code to modify this Plan at any time before the Confirmation Date.

13.2    Allocation of Plan Distributions Between Principal and Interest.  Except as expressly provided by the Plan to the extent that any Allowed Claim entitled to a Distribution under this Plan is composed of indebtedness and accrued but unpaid interest thereon, such distribution shall, to the extent permitted by applicable law, be allocated for United States federal income tax purposes to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest.

13.3    Applicable Law.    Except to the extent that the Bankruptcy Code or the

Bankruptcy Rules are applicable, the rights and obligations arising under this Plan shall be governed by the laws of the State of Georgia.

13.4   <u>Preparation of Estate Returns and Resolution of Tax Claims</u>.  Debtor shall file all tax returns and other filings with governmental authorities and may file determination requests under section 505(b) of the Bankruptcy Code to resolve any Disputed Claim relating to taxes with a governmental authority.

13.5   <u>Headings</u>.  The headings of the Articles and the sections of this Plan have been used for convenience only and shall not limit or otherwise affect the meaning thereof.

13.6   <u>Revocation of Plan</u>.  Debtor reserves the right, unilaterally and unconditionally, to revoke and/or withdraw this Plan at any time prior to entry of the Confirmation Order, and upon such revocation and/or withdrawal this Plan shall be deemed null and void and of no force and effect.

13.7   <u>No Admissions; Objection to Claims</u>.  Nothing in this Plan shall be deemed to constitute an admission that any individual, corporation, partnership, trust, venture, governmental unit, or any other form of legal entity as being the Holder of a Claim is the Holder of an Allowed Claim, except as expressly provided in this Plan.  The failure of Debtor to object to or examine any Claim for purposes of voting shall not be deemed a waiver of Debtor's rights to object to or reexamine such Claim in whole or in part.

13.8   <u>No Bar to Suits</u>.  Except as otherwise provided in Article 10 of this Plan, neither this Plan or confirmation hereof shall operate to bar or estop Debtor from commencing any Cause of Action, or any other legal action against any Holder of a Claim or any individual, corporation, partnership, trust, venture, governmental unit, or any other form of legal entity, whether such Cause of Action, or any other legal action arose prior to or after the Confirmation Date and whether or not the existence of such Cause of Action, or any other legal action was disclosed in any disclosure statement filed by Debtor in connection with this Plan or whether or not any payment was made or is made on account of any Claim.  Without limitation, Debtor retains and reserves the right to prosecute Retained Actions.

13.9   <u>Conflicts</u>.  In the event that provisions of the Disclosure Statement and provisions of this Plan conflict, the terms of this Plan shall govern.

## Article 14
## Tax Consequences

Tax consequences resulting from confirmation of this Plan can vary greatly among the various Classes of Creditors and Holders of Interests, or within each Class.  Significant tax consequences may occur as a result of confirmation of the Plan under the Internal Revenue Code and pursuant to state, local, and foreign tax statutes.  Because of the various tax issues involved, the differences in the nature of the Claims of various Creditors, the taxpayer status and methods of accounting and prior actions taken by Creditors with respect to their Claims, as well as the possibility that events subsequent to the date hereof could change the tax consequences, no

specific tax consequences to any Creditor or Holders of an Interest are represented, implied, or warranted.  The proponent assumes no responsibility for the tax effect that consummation of this Plan will have on any given Holder of a Claim or Interest.  Holders of Claims or Interest are strongly urged to consult their own tax advisors covering the federal, state, local and foreign tax consequences of the Plan to their individual situation.

Respectfully submitted this 25th day of April, 2018

/s/ William Lee Gentry
Debtor and Debtor in Possession


**JONES & WALDEN, LLC**

/s/ Cameron M. McCord
Cameron M. McCord
Georgia Bar No. 143065
Leon S. Jones
Georgia Bar No. 003980
21 Eighth Street, NE
Atlanta, Georgia 30309
(404) 564-9300
Attorney for Debtor and Debtor in
Possession

## CERTIFICATE OF SERVICE

I certify that on the date specified herein below I cause to be served a copy of the foregoing document via first class United States mail in a properly addressed envelope with sufficient postage affixed thereto to ensure delivery upon the parties listed below.

Office of the United States Trustee
362 Richard B. Russell Federal Bldg.
75 Ted Turner Drive, SW
Atlanta, GA 30303

This 25th day of April, 2018.

JONES & WALDEN, LLC

*/s/ Cameron M. McCord*
Cameron M. McCord
Georgia Bar No. 143065
Leon S. Jones
Georgia Bar No. 003980
21 Eighth Street, NE
Atlanta, Georgia 30309
(404) 564-9300
Attorneys for Debtor and Debtor in
Possession